235 P.2d 534

**PALMER et al. v. YOUNG et al.**

**No. 5321.**

Supreme Court of New Mexico.

Sept. 7, 1951.

Brenton & Hall, Frank C. Boyce, Carrizozo, for appellants.

R. C. Garland, Las Cruces, O. O. Askren, Roswell, for appellees.

SADLER, Justice.

The plaintiffs below, appearing here as appellants, complain of a judgment against them in the sum of $3,500 rendered in a replevin action in which defendants elected by their answer to take the value of the property recovered under the writ of replevin in the event the plaintiffs should fail to prosecute their suit with effect and without delay, as provided in 1941 Comp. § 25–1512. The parties will be referred to in this court as they were designated below.

The plaintiffs were the owners of certain real estate developments near Ruidoso in Lincoln County, New Mexico, known as Riverside Heights Subdivision, McCarty Subdivision, White Mountain Heights Subdivision, Palmer-Gateway Subdivision, Cree Meadows Golf and Country Club Subdivision, Ruidoso Airport, the Lake Area of the Palmer-Gateway Subdivision,

Young Heights, Cree Meadows Heights, and God's Country. They were doing business under the name of White Mountain Development Company in promoting the disposition of these properties. While thus engaged the plaintiffs entered into a contract with Roswell Map and Blueprint Company to survey their properties upon which the latter company worked for approximately one year. After completing a year of work on the project the defendants, C. R. Young and Wylie Edgington, operating as partners, took over the contract and partially completed it.

Under the terms of the arrangement, Roswell Map and Blueprint Co., hereinafter designated as the Roswell Company, and the defendants, Young and Edgington, were to do the survey and plat numerous subdivisions under the direction of White Mountain Development Company, hereinafter to be designated as the White Mountain Company. The plats, when finished, were to be certified and filed with the County Clerk of Lincoln County and copies of same and of other surveying data were to be furnished to the White Mountain Company. The defendant, C. R. Young, although experienced in surveying, did not at any time material to this controversy hold a license as a surveyor in the State of New Mexico.

During the time between April 2, 1946, and August 2, 1947, defendant Young devoted the larger part of his time to surveying plaintiffs' lands, laying out subdivisions thereof, locating lots, blocks, streets and alleys thereon and in staking and laying out lots on the ground. The plaintiffs furnished him space in their office in Ruidoso, New Mexico, between April 2, 1946, and August 2, 1947, for use in carrying on his work and they paid him the sum of $4,572.02 for the work he did for plaintiffs during this period.

For some four or five months prior to August, 1947, the defendant Young was engaged in surveying lands of plaintiffs for the purpose of laying out and platting Young Heights, Cree Meadows and Palmer-Gateways Subdivisions which work was in a partially completed state on August 2, 1947, upon which date or thereabouts he terminated his employment with the plaintiffs. Upon quitting plaintiffs' employment Young took with him the field notes, partially completed maps and tracings of the three subdivisions last above named; taking also all of the books of field notes, maps and tracings of the work performed for plaintiffs between March 19, 1945, and August 2, 1947, leaving all of said mentioned articles at the home of defendant Edgington.

Soon thereafter and on September 16, 1947, following discovery by plaintiffs that these articles had been taken by Young as stated above, they instituted this action

in replevin and caused to be taken from the defendants, Young and Edgington, 12 note books containing field notes and 41 tracings, maps, plats and prints more particularly described in Finding of Fact No. 18, as follows:

"18. That the plaintiffs replevied from the defendants herein field notes, maps, etc., pertaining to the following described projects or subdivisions:

"1. Ruidoso Pine Lodge.

"2. Daniels, Reese and Johnson (Palmer Gateway)

"3. Young Heights.

"4. Section Subdivision, Data, Jack Hull Tract, Ruidoso Realty Co. (Block B)

"5. Lookout Subdivision, Lots 19, 20, 21, 22, Ruidoso Pine Lodge.

"6. Country Club Tract, Block A. Blocks B & BB Ruidoso Realty Co.

"7. Airport, Block B, Block A, Ruidoso Realty Co.

"8. Fish Lake.

"9. New Subdivision (Cree?)

"10. New Subdivision (Cree?)

"11. Skyland Lots, 724, 725, 726, 727, 728.

"12. Barney Luck Survey. Ruidoso Water Co. Survey. (Morgan)

"13. Total of 12 notebooks.

"1. Map of Cree Ranch (2each)

"2. Print of Lake Area (Fish Lakes)

"3. Airport (Ruidoso)

"4. Print of Cree Meadows Country Club.

"5. Prints of McCarty Subdivision.

"6. Print of Golf Course Layout, (Cree Meadows.)

"7. Print of Palmer Gateway Subdivision.

"8. Print of Golf Course (Colored) Cree Meadows.

"9. Rough Draft (God's Country)

"10. Print of Highway Location Right of Way Map. From Junction to Ruidoso.

"11. Map, Palmer Gateway Subdivision (Print)

"12. Print Country Club Subdivision.

"13. Print and application for permit on Fish Lakes (Application forms)

"14. Print Palmer Gateway.

"15. Print with penciled notes thereon of Fish Lake Area.

"16. Ruidoso Airport Map (Print)

"17. Print of Cedar Creek from Gateway Subd. to Lookout Subd. Tracings (Cloth and Paper)

"1. Lookout Subdivision. Cloth Tracing.

"2. Hamilton Terrace Subdivision. Cloth Tracing.

"3. Cree Meadows Country Club Subdivision. Cloth Tracing.

"4. Palmer Gateway Subdivision. Cloth Tracing.

"5. Work Sketch (Preliminary) Lookout Subd. Paper.

"6. Work Sketch (Preliminary) Palmer Gateway Subd. Paper.

"7. Work Sketch (Preliminary) Hamilton Terrace, Paper.

"8. Work Sketch (Preliminary) Cree Meadows Golf Course. Paper.

"9. Paper Tracing of Ruidoso Canyon from east line of Skyland to Indian Reservation.

"10. Paper Tracing of Cedar Creek from Gateway Subd. to Lookout and Hamilton Terrace Subds.

"11. Work Sketch (Preliminary) Hamilton Terrace Subd.

"12. Work Sketch (Preliminary) Lookout Subd.

"13. Paper Tracing. Contour map of Fish Lake Area.

"14. Work Sketch (Preliminary) Hamilton Terrace Subd.

"15. Paper Tracing. Layout of Cree Meadows Golf Course.

"16. Paper Tracing (Preliminary) Palmer Gateway Subd.

"17. Paper Tracing (Preliminary) Lookout Subd.

"18. Paper Tracing. Highway location right of way map, from Ruidoso to Alto.

"19. Paper Tracing (Ruidoso Airport)

"20. Paper Tracing. Colored layout of High School Stadium.

"21. Paper Tracing. Hamilton Terrace and Lookout Subd.

"22. Cloth Tracing, showing Cree Meadows Airport in relation to—

"23. Young Heights. Subdivision. Partially completed cloth tracing. Started recently.

"24. Prints. Proposed Country Club Building."

In their affidavit and complaint in replevin, the plaintiffs valued the replevied articles at $10,000, a valuation given such articles in its findings of fact by the trial court. The defendants in their answer exercised their statutory privilege of electing to take the assessed value of the property seized from them under the writ of replevin, rather than have a return of the property itself, in the event plaintiffs should fail to prosecute their suit with effect and without delay.

All of the facts recited hereinabove are within the findings made by the trial court

some of which, as hereinafter shown, are vigorously challenged by the plaintiffs as being without substantial evidence to support them. In addition the trial court made the following findings of fact, to wit:

"20. That the defendants are, and at all times material hereto were entitled to the possession of said replevied articles except two books of field notes, maps and prints made from the original tracings, or to their value.

"21. That the defendant, C. R. Young, is obligated to the Roswell Map and Blue Print Company to return all of the maps, prints, etc., owned by said Roswell Map and Blue Print Company, and delivered by it to the possession of the defendant Young, and which were replevied by plaintiffs in this action.

"22. That C. R. Young and Wiley Edgington left the work without completing the project and without furnishing all the data that they were obligated to furnish and had already been paid for.

"23. That when C. R. Young and Wiley Edgington left the project they took with them all the surveyor's notes, all of the tracings, maps and prints of this entire project.

"24. That all the original surveyor's field notes and original tracings were the property of the Roswell Map and Blue Print Company, C. R. Young and Wiley Edgington, and that C. R. Young had the right of possession to the part of the property that belonged to the Roswell Map and Blue Print Company.

"25. That all the maps made from the original tracings, prints and two of the books containing surveyor's field notes, were the property of the White Mountain Development Company and were wrongfully taken by Young and Edgington.

"26. That the White Mountain Development Company had a right to be furnished with copies and prints of all surveyor's field notes and tracings of the work completed on the project and paid for.

"27. That after the above mentioned articles have been replevied ten of them were tenderd back to Young and Edgington, and the tender was refused.

"28. That the defendants have elected to take the value of the property taken under the writ of replevin herein.

"29. That the value of the property replevied is $10,000.00.

"30. That the value of the original field notes and original tracings wrongfully replevied from the defendants is $3500.00."

After having found the facts as aforesaid, the trial court deduced therefrom the following conclusions of law, to wit:

"1. That the maps, books, plats and tracings involved in this action are worth ten thousand dollars to the plaintiffs on the

theory that it would cost approximately that amount to replace them.

"2. That the plaintiffs failed to prosecute their action with effect, and failed to show that they were entitled to the possession of the property owned by the Roswell Map and Blue Print Company, and the property owned by the defendants, Young and Edgington.

"3. That the defendants are entitled, and at all times material hereto were entited to, the possession of all the property replevied, except such items as belong to the White Mountain Power and Development Company.

"4. That the White Mountain Power and Development Company should have all the replevied property that is rightfully theirs,. that is to say, all the property except the original surveyor's field notes and original tracings.

"5. That the defendants have elected to take the value of these original field notes and original tracings in lieu of damages and should be paid for the same by the plaintiffs.

"6. That the tender of ten of these articles replevied back to the defendants by the plaintiffs has no bearing on this case.

"7. That the fact that part of the articles replevied herein are the property of the Roswell Map and Blue Print Company does not affect this case, as the defendant C. R. Young is responsible for them and had a right to their possession.

"8. That the defendants herein should recover the value, under their election, of the original surveyor's field notes and original tracings in lieu of damages in the amount of $3500.00."

While the plaintiffs present and rely upon four points for reversal, we think such of them as are hereinafter discussed and ruled upon will be sufficient to dispose of the appeal. It will be noted that in their affidavit of replevin, the plaintiffs declared the value of the property sought to be replevied was $10,000. The trial court found that certain of the replevied articles belonged to the plaintiffs but that perhaps the greater number of them belonged either to the defendants, or one of them, or were the property of one Aubrey Gregg doing business as Roswell Map and Blue Print Company though in the custody and possession of defendant, Young. However, there is confusion in the findings over who owned what, or was entitled to its possession. This is apparent from a reading of the findings.

In view of the fact that some of the articles replevied were found to belong to the plaintiffs yet certain of them, perhaps the larger portion, either to belong to, or be rightfully in the possession of, the defendants, or one of them, the court rendered judgment in defendants' favor for $3,500 as

the value fixed by it of the replevied articles for which defendants had elected to take the assessed value rather than a return of such articles.

Much time is spent by the parties in their briefs discussing the question whether the plaintiffs are entitled to challenge the verity of their own declaration of value fixed in the affidavit of replevin filed by them. The defendants cite 54 C. J. 543, § 246 under "Replevin" to the proposition following, to wit: "The affidavit is competent evidence of the value of the property. Defendant, not being bound by the value set by plaintiff in his affidavit of value, may produce testimony to show a lessor value, but plaintiff cannot introduce evidence to show a different value."

They also cite Butts v. Woods, 4 N.M., Gild., 343, 16 P. 617; Cochrane v. Stevenson, 32 N.M. 264, 255 P. 404; and Giannini v. Wilson, 43 N.M. 460, 95 P.2d 209, as supporting their contention that a plaintiff in replevin may not challenge or impeach the value placed upon the property replevied in the affidavit of replevin which he filed in instituting the action.

The plaintiffs counter by citing cases said to represent the sounder rule which renders it proper for a plaintiff in replevin to show the true value of the property replevied is less than that stated in the affidavit of replevin. In other words, the authorities relied upon by plaintiffs would treat the value laid in the affidavit as prima facie only, and not conclusive. Illustrative are such authorities as 46 Am.Jur. 90; Maguire v. Pan-American Music Co., 205 Mass. 64, 91 N.E. 135, and Fergusson v. Comfort, 194 Mo.App. 423, 184 S.W. 1192.

We deem it unimportant to speak decisively upon the question argued by counsel, namely, whether the value fixed by a plaintiff in replevin in his affidavit is prima facie only or conclusive, if the matter be open to decision in this state under the authorities cited by defendants. For, even if the true rule be as they contend, it must be obvious to all that it can have no application here. If, as a matter of fact, the trial court had found that *all of the articles* replevied were tortiously seized and either belonged to defendants, or one of them, or as to which they were rightfully entitled to the possession, then we should have to take a stand and say whether plaintiffs were bound by the declaration of value they made in the affidavit in replevin. As already noted, however, the trial court found that some of the property belonged to the plaintiffs and that they were entitled to its possession. Such being the case, it then became the burden of the defendants to tender evidence and prove the actual value, article by article, or class by class, if some of the same kind had a common value, of the property whose assessed value they elected to take in lieu of a return of the property. This they utterly failed to do.

It is impossible from an examination of this record to predicate a valuation of $3,500 on the property whose assessed value the defendants elected to take in lieu of a return thereof. How the trial court arrived at that figure we simply cannot tell.

 The suggestion is not persuasive that the situation is the same as if the property replevied had been 40 head of cattle and the court had found the value to be $5,000. Even in the supposed case, there would have to be some basis in the evidence for such a valuation. But maps, field notes and original tracings are not cows and when the omnibus valuation of $10,000 was rendered of no effect by proof that some of the property replevied actually belonged to plaintiffs and another substantial part to defendants, or was rightfully in their possession, there was nothing left on which to rest valuation of the segregated parts, except as proof as to such several parts was offered. None was. This error alone calls for a reversal of the judgment and the award of a new trial.

It is next strongly argued under defendants' Point III that the trial court erred in holding the defendant, Young, could defend in this action by showing that a portion of the maps, tracings and note books belonged to one Audrey Gregg, doing business as Roswell Map and Blue Print Company, a stranger to the action, and then elect not to receive back the replevied items, but to take in lieu thereof the assessed value. Counsel point out how illogical and inequitable it would be to permit defendants Young and Edgington to recover a money judgment in present circumstances by paraphrasing this example, to wit:

"A (Gregg) loans a mule (notes and tracings) to B (Young). C (Plaintiffs here) replevins mule (Notes, etc.) from B (Young). On the trial B (Young) proves that mule (notes) is the property of A (Gregg). But B (Young) says to the Court: 'Since C (Plaintiffs) made a mistake and replevied property that belongs neither to me or the plaintiff—I'll take the $100.00 which you said the mule (notes) was worth.'

"Under what rule of law or equity does B have the right to let C keep A's mule and take money for it?

"It may be a reasonable rule to permit Young to defeat plaintiffs' replevin action by showing title in third party and recover the property for his third party, but he should not be permitted to in effect *sell* the third party's property to plaintiff and recover a money judgment for property which he doesn't own!"

Answering this argument, which admittedly is persuasive, the defendants point out that the statute, 1941 Comp. § 25–1503, seems to permit a bailee who is defendant in replevin to do this very thing, being answerable over, of course, where damages

are recovered in lieu of property, to the general owner for the amount of any recovery. They cite 54 C.J. 456–457, § 84 under Replevin, reading: "* * * If the party cast, however, has no interest in the property, the prevailing party is entitled to the full value of the property even though his interest is special or limited being held answerable over to the general owner for the balance. * * *"

They say that finding of fact No. 21 shows the trial court well understood the applicable rule in such circumstances as this and the liability thereunder of defendant Young to his bailor, Roswell Map and Blue Print Company. It reads: "That the defendant, C. R. Young, is obligated to the Roswell Map and Blue Print Company to return all of the maps, prints, etc., owned by said Roswell Map and Blue Print Company, and delivered by it to the possession of the defendant Young, and which were replevied by plaintiffs in this action."

The defendants agree that Aubrey Gregg, general owner of the property in Young's possession, might have intervened in the action, but contend he was not compelled to do so, citing 54 C.J. 464, § 93, note 14. Certainly, our replevin statutes permit intervention. 1941 Comp. § 25–1503. The general owner, Aubrey Gregg, appeared and testified as a witness for the defendants, Young and Edgington. It certainly would not lie in his mouth to question the right of plaintiffs to make settlement with Young for any recovery by him in his, Gregg's behalf. This claim of error by plaintiffs must be denied.

Finally, it is contended that the judgment is so vague, indefinite and uncertain in failing clearly to identify plaintiffs' property, or the defendants', as to constitute it a nullity. We can readily agree with much that is said by plaintiffs in this connection. Still, since a reversal and award of a new trial will result in vacating the present judgment, it would serve little purpose to declare its vagueness and uncertainty render it a nullity, when it is being ordered set aside upon another ground and a new trial awarded. As already indicated the findings themselves are confusing, some of them inconsistent, as demonstrated by counsel for plaintiffs. It is well enough to suggest that upon a retrial counsel for both sides endeavor to clarify the findings, especially by establishing the ownership, or right to possession, of each specific item of property replevied. For instance, the defendant Young disclaimed ownership of any of the replevied articles, and the trial court so found and, yet, notwithstanding this testimony and finding, there is still another finding, No. 24, which states: "that all the original surveyor's notes and original tracings were the property of Roswell Map and Blue Print Company, *C. R. Young* and Wiley Edgington," etc. (Emphasis ours.). This is but a single instance of the inconsistency and confusion mentioned.

It follows from what has been said that the judgment reviewed is erroneous and should be set aside. Accordingly, it will be reversed and the cause remanded to the district court with a direction to it to set aside its judgment and award a new trial. The plaintiffs will recover their costs of the appeal.

It is so ordered.

LUJAN, C. J., and McGHEE, COMPTON and COORS, JJ., concur.