495 P.2d 1091

STATE of New Mexico, Plaintiff-Appellee,

v.

Dennis Paul CARLTON and Pearl Diana Carlton, Defendants-Appellants.

No. 688.

Court of Appeals of New Mexico.

Jan. 21, 1972.

Rehearing Denied Feb. 16, 1972.

Certiorari Denied March 22, 1972.

Fred T. Hensley, Portales, David W. Bonem, Clovis, for defendants-appellants.

David F. Norvell, Atty. Gen., Jay F. Rosenthal, Asst. Atty. Gen., for plaintiff-appellee.

## OPINION

COWAN, Judge.

On September 4, 1968, Dennis Paul Carlton and his wife, Pearl Diana Carlton, were charged with murder in Roosevelt County, New Mexico, contrary to § 40A–2–1, N.M.S.A.1953 (Repl.Vol. 6). A first trial, held in Curry County on a change of venue, resulted in a mistrial after the jury was unable to reach a verdict. A second trial resulted in a conviction for second degree murder, from which conviction defendants appealed. Their conviction was reversed by the Court of Appeals [State v. Carlton, 81 N.M. 753, 473 P.2d 367 (Ct. App.1970)] and a new trial ordered. The third trial was held in Lea County, on a second change of venue, and the defendants were again convicted of second degree murder. From a judgment and sentence entered following this conviction, defendants appeal, urging error under 13 points. We affirm.

On August 18, 1968, at 8:22 P.M., the Portales Police Department was advised

by a witness that a break-in had occurred at the B & J Drug Store in Portales. Officers found the rear door to the drugstore had been broken open and the body of Elbert Muncy, a pharmacist employed by the drugstore, in the storeroom. His death was caused by multiple gun shot wounds. Defendant Pearl had been an employee of the drugstore for a little over six months.

## POINT I.

■ Defendants' first point concerns the admission into evidence of eight photographs and one diagram. Three of the photographs and the diagram depicted the interior of the store in which the crime was committed. Defendants claim error in the admission of the three photographs because the lighting was not the same as at the time of the alleged murder. Another objection was that one of the three photographs showed two persons standing in the counter area while witness testimony was that individuals seen in the drugstore were "moving rapidly". Defendants' objection to the diagram was that, in the two-week interval between the day of the murder and the day of the preparation of the drawing, "some changes may have taken place". This seems to have been predicated on the fact that merchandise would change during the period. Since the diagram was introduced to indicate the height of the counters, there would be no prejudice to the defendants, the amount or position of the merchandise being immaterial.

Four of the photographs were of the body of the deceased and defendants claim these to be "duplicatory, repetitious and highly prejudicial to the defendants."

The eighth photograph was of defendant Pearl taken in the Roosevelt County Sheriff's office with her height indicated by markings in the background. She claims the photograph depicted her as a criminal.

"The question of admission of photographs into evidence rests largely within the discretion of the trial court; and ordinarily his decision on the question will not be disturbed. * * *"

State v. Sedillo, 76 N.M. 273, 414 P.2d 500 (1966); State v. Johnson, 57 N.M. 716, 263 P.2d 282 (1953). The latter case, quoting from Potts v. People, 114 Colo. 253, 158 P.2d 739, 159 A.L.R. 1410 (1945), states:

"'Photographs are the pictured expressions of data observed by a witness. They are often more accurate than any description by words, and give a clearer comprehension of the physical facts than can be obtained from the testimony of witnesses. Ordinarily photographs are competent evidence of anything which it is competent for a witness to describe in words. * * *'"

■ Witnesses testified as to the interior of the store depicted in the three photographs and the diagram. Medical witnesses testified concerning eight bullet wounds in the body shown in four photographs. A witness testified concerning the height of defendant Pearl as measured by the last photograph. "The photographic evidence constituted visual explanations of the testimony of the witnesses and was corroborative of this testimony. The photographs were admissible for these purposes." State v. Webb, 81 N.M. 508, 469 P.2d 153 (Ct.App.1970). We find nothing in the diagram or any of the photographs, or the number thereof, which would tend to mislead the jury or to arouse prejudice or passion. They were reasonably relevant to the issues of the case.

## POINT II.

■ The defendants assert that the trial court erred in allowing the state to present a witness whose name was not endorsed on the information or bill of particulars. The defendants claimed surprise.

Section 41–6–47, N.M.S.A.1953 (Repl. Vol. 6), provides:

"When an indictment or information is filed, the names of all the witnesses or deponents on which evidence the indictment or information was based shall be endorsed thereon before it is presented, and the district attorney shall endorse on the indictment or information at such

time as the court may by rule or otherwise prescribe the names of such other witnesses as he purposes to call. A failure to so endorse the said names shall not affect the validity or insufficiency of the indictment or information, but the court in which the indictment or information was filed, shall, upon application of the defendant, direct the names of such witnesses to be endorsed. * * *"

State v. Edwards, 54 N.M. 189, 217 P.2d 854 (1950), states:

" . . . Whether names of witnesses may be endorsed during trial is a matter resting within the sound discretion of the court. It is not enough that a defendant claim surprise or prejudice in the calling of an adverse witness or one whose name does not appear upon the information charging him with crime. Nor is the mere admission of testimony of such witness, error; rather, error follows from a denial of an opportunity to rebut the objectionable evidence. * * *"

The day before the witness was called, defendants advised the court that they had had the opportunity to interview the witness and were aware of the nature of his testimony, thus obviating any claim of surprise. No postponement or continuance was requested nor did defendants show to the court denial of an opportunity to rebut the evidence. State v. Edwards, supra; State v. Maes, 81 N.M. 550, 469 P.2d 529 (Ct. App.1970). The admission of the testimony was within the sound discretion of the trial court and, absent abuse of such discretion, the action of the trial court will not be disturbed on appeal. State v. Lujan, 79 N.M. 200, 441 P.2d 497 (1968); State v. Grice, 47 N.M. 197, 138 P.2d 1016 (1943).

POINT III.

■ Defendants question three items of evidence. They claim the trial court should have declared a mistrial because of a gratuitous statement from one of the state's witnesses. The question, propounded by the defense, and the answer thereto were as follows:

"Q. Then let me get you straight today; are you saying that you can or cannot identify this defendant?

"A. I am saying that I can as far as I am concerned that person sitting right over there and Mr. Muncy is dead and they definitely had a lot to do with it."

Defendants' later motion for a mistrial was overruled but the court offered to admonish the jury to disregard the answer. This offer was declined by the defendants since the admonishment would necessarily include a repetition of the answer, the objection not having been made at the time of the statement. While the answer is susceptible of more than one construction and, although possibly improper as an opinion of guilt (Territory v. Archuleta, 16 N.M. 219, 114 P. 285 [1911]), the offer of the court to admonish the jury was sufficient. State v. Ferguson, 77 N.M. 441, 423 P.2d 872 (1967); State v. McFerran, 80 N.M. 622, 459 P.2d 148 (Ct.App.1969).

■ Defendants argue that the trial court should have sustained a motion for a mistrial because of leading questions asked by the state. The trial lasted five days and the record of testimony is extensive. Our review of that record discloses no abuse of the court's discretion in its control of examination of witnesses. Some leading questions were asked and to those of substance the court sustained objections and admonished the jury. "[W]here evidence erroneously admitted during the progress of the trial is withdrawn or stricken out by the court, the error is cured." State v. Dendy, 34 N.M. 533, 285 P. 486 (1929).

■ Defendants further complain under point III that their motion for a mistrial should have been granted because a witness testified that one or the other of the defendants had been incarcerated in the state penitentiary. The testimony was that "it's the custom of the personnel in Santa Fe that no one enters their institution up there until they are in handcuffs", with no reference being made to either defendant.

The defendants now argue that this testimony is evidence of a prior conviction and cite cases supporting the rule that such evidence is improper and prejudicial. As to the rule of law we agree as a general proposition, but as to its application to this testimony, we do not. The testimony was in response to a question propounded to the witness, a deputy sheriff, by the defendants concerning some earlier testimony to the effect that he had never seen the "defendant" handcuffed, without particular reference to either defendant. The answer, while not particularly responsive, falls short of being evidence of a prior conviction. Defendants rely on State v. Rowell, 77 N.M. 124, 419 P.2d 966 (1966), a case distinguishable upon its facts. The question asked in that case, in and by itself, was so prejudicial as to be irremediable by admonition. Here, the court's subsequent admonition removed any prejudice which might have been directed against the defendants by reason of the testimony. State v. McFerran, supra; State v. Ferguson, supra.

### POINT IV.

■ Defendants state that the trial court erred in admitting into evidence state's exhibit No. 25, a consent to search signed by the defendants on August 19, 1968, because it was the product of duress or coercion. The claimed coercion is that several police officers were present and the defendants were advised that a search warrant would be obtained if the consent was not voluntarily given. The evidence is that the defendants voluntarily went to the sheriff's office the morning of August 19 to explain their presence, and that of their car, at the drugstore the evening before at the approximate time of the murder. Although not under arrest at the time, defendants were asked if they would consent to a search. They were "most willing" and this was before any comment was made about the officer being able to get a search warrant. The record does not establish, as a matter of law, that the consent was no more than acquiescence. See State v.

Lewis, 80 N.M. 274, 454 P.2d 360 (Ct.App. 1969).

"The question of whether consent has been given is a question of fact subject to the limitations of judicial review. * * * Each case must stand or fall on its own special facts, and in the trial court's judgment of the credibility of the witnesses. * * *"

State v. Sneed, 76 N.M. 349, 414 P.2d 858 (1966). We cannot hold, as a matter of law, that the trial court erred in admitting the consent to search.

### POINT V.

■ Closely allied to their point IV is defendants' claim that the trial court erred in refusing to give their requested instruction which would have let the jury decide if the consents to search their automobile and other property were voluntarily given. The rule is enunciated in State v. Sneed, supra, as follows:

"A search and seizure may be made without a search warrant if the individual freely and intelligently gives his unequivocal and specific consent to the search. The consent is not voluntary if it is the product of duress or coercion, actual or implied. The consent must be proven by clear and positive evidence and the burden of proof is on the state. * * *"

During the criminal investigation, and following the initial opening of their automobile trunk, the car was searched twice. Consents to search were signed by the defendants before each of these two searches. At the time of the first search on August 19, 1968, a set of clippers and two syringes, marked with price tags as being from B & J Drug, were found by the officers, but were not removed from the automobile until the second search. The voluntariness of the second consent to search is not in question. At the trial, evidence was introduced on the question of the voluntariness of the two consents to search. Thereafter the court admitted the three seized

items into evidence, thus ruling that both consents were voluntary.

The requested instruction was:

"The fact that the Court has admitted into evidence exhibits showing a waiver of the right against unlawful search and seizure does not prevent you from making a factual determination whether the right against unlawful search and seizure was voluntarily waived. If you find that such right was not voluntarily waived, Exhibits 26, 27, and 28, which are the clippers and the two syringes, would not be admissible into evidence."

In support of their position, defendants cite several cases concerning the admissibility of confessions. We do not deem them applicable to a consent to search.

 We apply the rule announced in Maxwell v. Stephens, 348 F.2d 325 (8th Cir. 1965), that:

" * * * [A] consent freely and intelligently given by the proper person may operate to eliminate any question otherwise existing as to the propriety of a search".

The question of consent to search was a matter of law to be determined by the court and was not an issue to be submitted to the jury. State v. Garcia (Ct.App.) 83 N.M. 490, 493 P.2d 975, decided December 22, 1971; see State v. Deltenre, 77 N.M. 497, 424 P.2d 782 (1966). We conclude that the state carried its burden of proving the defendants' consent to search was voluntary, that the court properly permitted the introduction of the first consent into evidence and correctly refused defendants' requested instruction.

POINT VI.

 Law officers recorded a conversation with Dennis on August 19, 1968, at which time he stated the back door of the drugstore was open when he and his wife arrived the evening before. On August 20, 1968, during another conversation with law officers, he stated that he had to force the back door open in order to enter the drug-store. This conversation was unrecorded because of the failure of the law officers to operate the recording machine properly. The only material difference in the two conversations was the method of entry through the back door.

Defendant Dennis contends that the failure to record the conversation of August 20 deprived him of due process because that conversation and the testimony of an eye witness agreed as to how he effected entry into the store. Defendants rely on Trimble v. State, 75 N.M. 183, 402 P.2d 162 (1965), in support of their contention. Trimble is factually different. There, law enforcement officers took recordings from the possession of the defendant and erased alleged conversations by grossly mishandling them. Defendant Trimble claimed that the tapes contained conversations which would assist in his defense.

Here, the missing evidence was supplied by the law officer and defendant Dennis when they took the stand. Dennis was not deprived of any evidence. The failure to record the August 20th session was not a denial of due process. State v. McFerran, supra.

POINT VII.

 Following the first trial of this case the state removed certain exhibits from evidence and sent them to the Federal Bureau of Investigation for testing. This removal was without court approval or notice to the defendants. The tests were negative and there is no claim that the exhibits were altered in any respect.

Defendants' motion to suppress these evidentiary exhibits in the instant case was denied and properly so, there being no claim or proof of prejudice. We agree with the trial court in admonishing the prosecution for the secret removal of these items, however, the record reveals a chain of custody from removal to return. Assuming it was error to remove the evidence in this manner, prejudice must be shown to warrant reversal. State v. Ranne, 80 N.M. 188, 453 P.2d 209 (Ct.App.1969). No prejudice was shown.

### POINT VIII.

Tape recorded conversations between law enforcement officers and the defendants were offered in evidence by the prosecution and admitted by the court. This was done over defendants' objections that the tapes contained officers' irrelevant and prejudicial comments, improper questions and unsworn testimony. The tape recordings were edited, with certain portions deemed inadmissible being stricken by the court. Before the playback, the jury was advised by the court as follows:

"Before we play this tape recording, I want to admonish the jurors with regard to certain matters. One is that any statements made by the officers who are conducting the interrogation are not to be taken as evidence. In other words, not as the truth of the facts stated. Also, it will be necessary in view of the Court's ruling on certain portions of these tape recordings for this machine to be taken out into the chambers periodically in order to get by certain portions of which the Court rules is inadmissible. There are going to be some interruptions which we can't avoid. I think probably you ought to identify the names by—the name of the officer whose voices appear in this recording, and I am just wondering of course some of us know these officers' voices well enough to identify them pretty well."

In their brief, defendants set out the two comments claimed as being "irrelevant and prejudicial". Neither of these was heard by the jury, both having been deleted from the tape recording. We do not consider these matters. We have, however, reviewed the claimed "improper questions" and "unsworn statements". We cannot agree that the court's permitting them to be played to the jury as part of the tape recordings constitutes reversible error. Defendants did not move the court to strike the questions they deemed objectionable but objected to the admission of the statements in their entirety. Their motion being directed to the entire statements, part of which were good, was properly overruled. See Radcliffe v. Chaves, 15 N.M. 258, 110 P. 699 (1910).

Although some of the questions may have assumed facts of an accusatory nature, these facts were the subject of other testimonial evidence, independent of the statements. Additionally, the answers given by the defendants were, in each case, exculpatory and explanatory. As we read the matters complained of, no prejudice was shown and, absent such prejudice, the admission of the recorded statements was not error. State v. Ranne, supra; see also Paulson v. Scott, 260 Wis. 141, 50 N.W.2d 376 (1951).

### POINT IX.

The prosecution offered and the court admitted into evidence, as state's exhibits 52, 53, 54, and 55, personal letters or notes between the defendants while both were confined in the Roosevelt County jail. Defendants objected on the grounds that the exhibits (1) were used in an impeaching manner, (2) were in violation of the marital privilege, (3) contained inadmissible material and personal matters which were irrelevant, and (4) tended to incriminate the co-defendant. The court overruled the objections except as to the personal matters (No. 3), stating that these would be deleted by the state and that the defendants could themselves read to the jury any omitted portions of the correspondence which they considered pertinent. The defendants then announced that they did not "propose to participate in any type of censorship" and that "leaving out this material changes the meaning of the notes".

On appeal, defendants' argument concerns only two of the exhibits. They assert that the court erred in allowing "inflammatory and prejudicial material" to be read to the jury from one of the letters. This claim of error was not included in the grounds for objection below and will not be considered here. State v. Everitt, 80 N.M. 41, 450 P.2d 927 (Ct.App.1969).

■ Defendants next assert that the deletions and omissions changed the meaning of the letters. Although defendants announced that leaving out certain material changed the meaning of the letters, a ruling or decision on the question by the trial court was not fairly invoked. Supreme Court Rule 20(2) [§ 21–2–1(20) (2), N.M.S.A. 1953]; State v. Sexton, 82 N.M. 648, 485 P.2d 982 (Ct.App.1971); Barnett v. Cal M, Inc., 79 N.M. 553, 445 P.2d 974 (1968). The defendants did not object to any particular parts of the letters nor did they call the trial court's attention to any specific distortion or altered meaning because of the deletions made by the state. Defendants' general objection was insufficient. See State v. Harrison, 81 N.M. 623, 471 P.2d 193 (Ct.App.1970).

## POINT X.

During the early morning hours following the murder, police were searching for an automobile fitting the description of one in the area at the time of the crime. An officer located such an automobile parked in the street in front of the defendants' residence about 4:00 A.M. on August 19, 1968. The Roosevelt County sheriff went to the scene upon notification of the location of this automobile, later identified as belonging to defendant Dennis. The trunk of the car was not locked and the sheriff opened it by pulling a wire extending therefrom. He shined a flashlight into the interior and noticed that the "trunk was quite cluttered. There was [sic] a number of articles that was [sic] just pitched in the trunk." Nothing was taken from the car at this time nor was any particular item identified. The officers had no search warrant or consent to search the car from either of the defendants at this time.

A second search of the Carlton car was conducted that afternoon, after the defendants had executed a consent to its search. The defendants had sought out' the officers to explain why they and their car had been in the alley behind the store the night of the murder. They accompanied the sheriff to the police station voluntarily and signed a consent to search their automobile and other property. The officers searched the car in their presence and noted, among other things, two hypodermic syringes and a pair of animal clippers. The trunk was still cluttered and nothing was taken by the officers at that time. The following day another consent to search was obtained and, again in the presence of the defendants, the officers removed the three items just mentioned, later admitted into evidence as state's exhibits 27, 28, and 29. Between the second and third searches the trunk had "been cleaned up and everything was neatly arranged". The exhibits were important at the trial because of a question as to the date and manner of their removal from the drugstore.

Defendants contend that the court erred in permitting the sheriff to testify to the condition of the interior of the trunk of the defendants' automobile when he first opened it and in allowing the introduction of state's exhibits 27, 28, and 29 into evidence, claiming such exhibits to have been the product of an illegal search.

■ Assuming the first search of the car to have been illegal, what effect, if any, did this have on the admissibility of the three exhibits? Defendants claim that "what was seen by Sheriff Davis on the occasion of the illicit search led to other searches with the subsequent obtaining of evidence." We do not find this supported by the record. The facts appear to be that the two syringes and the animal clippers were noted upon the second search and taken from the car during the third search. There is no evidence that the sheriff saw the items during the first observation of the trunk. It follows that there was no showing of prejudice to the defendants by the sheriff's opening the trunk of the car and observing its interior in the first instance. We need not, therefore, determine the legality of the first search, if search there was. There is no evidence that the first observation in any way led to the next two searches or the three exhibits.

The trial court specifically found, by its admission into evidence of state's exhibits 27, 28, and 29, that there was a voluntary consent to search. We cannot say that its finding was either erroneous or unsupported by substantial evidence. Maxwell v. Stephens, supra.

Defendants' assertion that they were prejudiced by the sheriff's testimony that the trunk was in a cluttered condition is of no import. It was still in a cluttered condition at the time of the second search, although it had been straightened up by the time of the third search and the removal of the exhibits.

## POINT XI.

 Defendants allege that they were not properly warned of their rights prior to interrogation, and the tape recordings of their conversations with police officers were therefore inadmissible. They argue that they were not properly advised under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), because they were not told that they had a right to "stop questioning at any point and time". They do not assert that the four basic warnings required by *Miranda* were not given them. The record differs to some extent with defendants' claim. Defendant Pearl testified she was told that she could stop talking at any time.

In any event, we do not interpret *Miranda* as requiring such additional advice to be necessary. *Miranda* holds that "if the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." This is directive only. The record does not indicate that the defendants at any time wished to stop the questioning or conversation. The rights required by *Miranda* were afforded the defendants. State v. Pace, 80 N.M. 364, 456 P.2d 197 (1969).

 Defendant Dennis also argues that he did not effectively waive his right to remain silent, this contention being based on his comment that he couldn't afford an attorney. After this comment, he was reminded that if he wanted an attorney, the court would "appoint and pay" for one. Without further discussion or objection, Dennis stated that he was willing to talk "now." Waiver of the right to remain silent is supported by the record. State v. Pace, supra.

## POINT XII.

 Defendants urge that the statements obtained from them on August 20, 1968, were inadmissible because they had not been readvised of their rights and the previous warning given them on August 19 was deficient. We have determined that the defendants were properly advised prior to their interrogation on August 19, 1968. We are not constrained to hold that repeated warnings are necessary as a matter of law. Maguire v. United States, 396 F. 2d 327 (9th Cir. 1968).

## POINT XIII.

 Finally, defendant Pearl argues that the court should not have admitted some of her clothes into evidence "for the reason that * * * proper *Miranda* warnings prior to obtaining the consent were not shown * * *".

There was evidence that a sufficient *Miranda* warning was, in fact, given to defendant Pearl prior to the obtaining of her consent to search. In answering this contention on the basis of the record, we do not hold that the *Miranda* warnings must of necessity be given before there can be a valid consent to search. See State v. Carlton, 82 N.M. 537, 484 P.2d 757 (Ct. App.1971). All that is required is that a consent to search "must be freely and intelligently given, must be voluntary and not the product of duress or coercion, actual or implied, and must be proved by clear and positive evidence with the burden of proof on the state." State v. Aull, 78 N.M. 607, 435 P.2d 437 (1967), cert. denied 391 U.S. 927, 88 S.Ct. 1829, 20 L.Ed.2d 668 (1968). The state met this burden.

The judgments and sentences are affirmed.

It is so ordered.

WOOD, C. J., and HENDLEY, J., concur.

SUTIN, J., not participating.