824 P.2d 341 (1991)
113 N.M. 201
STATE of New Mexico, ex rel. HUMAN SERVICES DEPARTMENT, IN the MATTER OF the TERMINATION OF PARENTAL RIGHTS OF SHERRY C. AND JOHN M., Respondents, With Respect to the Minor Children, Jane Doe, John Doe, and Mary Doe.
No. 12444.
Court of Appeals of New Mexico.
November 26, 1991.
*343 Richard Griscom, General Counsel, Bridget A. Jacober, Children's Court Atty., New Mexico Human Services Dept., Santa Fe, for Human Services Dept.
Michael L. Gregory, Las Vegas, for appellant Sherry C.
Arthur L. Bustos, Las Vegas, for minor children.
E. James Hardgrave, Las Vegas, for appellee John M.

OPINION
MINZNER, Judge.
Mother appeals the children's court's termination of her parental rights. Father's appeal was previously dismissed while this case was assigned to the summary calendar, and he is not a party to this appeal. Mother contends on appeal that the children's court erred in allowing testimony from Dr. Herman Brock, mother's treating psychologist, because the information was protected under the psychotherapist-patient privilege contained in SCRA 1986, 11-504. The Human Services Department (HSD) argues that mother failed to preserve the issues argued on appeal. We agree with HSD that mother failed to preserve for appellate review all of the issues that her appeal involves. We address her issues, however, to the extent she fairly invoked a ruling by the children's court and to explain why we do not find it necessary to address the remaining issues. We affirm.

BACKGROUND.
Mother is the natural parent of three children, to whom we refer in this opinion as Jane, John, and Mary Doe. Jane was born in 1984 and at the time of the termination proceeding was six years old. John was born in 1987 and was three years old at the time of the proceeding. Mary Doe, whom mother never had in her custody, was born in 1988 and was two years old when mother's parental rights were terminated.
In August 1985, Jane was removed from her mother's custody and placed in foster care by HSD after HSD received reports that Jane was abused and neglected by mother. After mother and the child's father received counseling and parenting training, Jane was returned to their care in late 1986.
In May 1987, when John was approximately four months old, HSD received multiple referrals that both children were being abused and neglected. Jane and John were removed from their parents' care in June 1987. In January 1988, the children's court determined that the two children were abused and neglected. The court stated in the judgment that mother suffered from the developmental disability of mental retardation and that she was not capable of independent parenting. The court's findings were in part based on psychological evaluations conducted by Dr. Edward Siegel pursuant to the children's court's order. The court determined that, because of mother's limitations, she was not able to provide adequate care for the children. The court also found that father was limited in his ability to care for the children due to limited intellectual capacity and emotional difficulties. Physical and legal custody of the children remained with HSD.
HSD sought reunification of the family through a treatment plan that required mother and father to attend parenting classes and counseling sessions. HSD also provided homemaker assistance in basic living skills. According to HSD, the treatment plan was unsuccessful due to the parents' lack of cooperation and the difficulty they experienced in learning new skills.
In August 1988, while the other children were still in foster care, mother gave birth to Mary. HSD immediately filed an abuse and neglect petition regarding Mary, and she too was placed in foster care. Mother and father moved to Portales, New Mexico, in September 1988 to be near extended family members and to find suitable employment. The children remained in foster care in Las Vegas.
*344 In September, pursuant to a custody order placing Mary in HSD's care, the court ordered that both mother and father undergo "such psychological diagnostic evaluations and assessments as, in the discretion of the Department, are deemed necessary." A home study was also ordered at that time for the purpose of determining the parents' suitability to care for Mary. In December 1988, a judgment was entered adjudicating Mary to be a neglected child based in part on admissions by mother and father. She was placed in HSD's care, and HSD was instructed to find foster care for all three children.
The judgment also ordered that "the Respondents continue to receive treatment from Psychologist Herman Brock." In April 1989, the court approved a treatment plan, which required the respondents to "attend parenting classes with Dr. Brock" and "participate in family therapy to help them with their identified problems." The court also ordered HSD to "make a written report to the Court and counsel regarding the progress with respect to the implementation of this Treatment Plan[.]"
HSD filed a petition to terminate both mother's and father's parental rights in July 1989. Trial on the petition occurred in December 1989. Over mother's objection, Dr. Brock testified about his evaluation and treatment of both parents. Dr. Brock stated that he was asked by HSD to conduct a psychological evaluation of both parents, which he completed in October 1988. Subsequently, he conducted parenting training and counseling for both parents. Dr. Brock diagnosed mother as being at borderline intellectual functioning with no associated personality disorder. He testified that mother's parenting skills would not improve due to her limited abilities. According to Dr. Brock, mother was unable to generalize and apply the information she obtained from counseling and parenting classes. Dr. Brock stated that he knew that mother was not learning what she should when he observed her on a home visit with the children. During the visit, mother ignored the youngest child, fed the children what she later determined was spoiled bologna, and tried to feed the youngest child portions of meat that were too large for the child to ingest. In Dr. Brock's view, these incidents showed mother's continued inability to make sound parental judgments.
Dr. Brock indicated that he acquired the information on which his testimony was based in the course of rendering services arising under the court's order in the earlier abuse and neglect proceeding, and that he understood he was to assist father and mother to improve their parenting skills and then to report back to the court that they had been successful. Finally, he testified he had advised father and mother that he intended to report to the court.
Mother objected to Dr. Brock's oral testimony. She argued that the information was not admissible under Rule 11-504(D)(2) because the evaluation had been ordered in the earlier abuse and neglect proceeding rather than the present termination of parental rights proceeding, and therefore the court-ordered examination exception to the psychotherapist-patient privilege was inapplicable. The children's court judge found that none of the information that mother provided Dr. Brock was confidential or privileged.

I.
Rule 11-504(B) provides in part that "[a] patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purposes of diagnosis or treatment of his mental or emotional condition[.]" One of the exceptions to the privilege is found in Subsection (D)(2) of the rule. Specifically, "[i]f the judge orders an examination of the mental or emotional condition of the patient, communications made in the course thereof are not privileged under this rule with respect to the particular purpose for which the examination is ordered[.]" In the present case, the children's court ordered mother to be psychologically examined and evaluated regarding her parenting ability.
Mother argued at trial that because the order was entered in the abuse and neglect *345 proceeding rather than the parental termination proceeding, Dr. Brock's testimony regarding the psychological evaluations he conducted was not admissible pursuant to Rule 11-504(D)(2). She has not renewed that argument on appeal, and we do not address it here.
The question raised on appeal is whether Dr. Brock's testimony regarding his psychological treatment of mother, rather than his psychological evaluation of her, was admissible at trial. That question raises a policy issue, as well as the narrower issue on which the children's court based its decision admitting the evidence.
When the present proceeding was filed and at the time of the hearing, the only limitation in New Mexico on the psychotherapist-patient privilege was Rule 11-504(D)(2), which excluded from the privilege the results of court-ordered psychological examinations. Our legislature has not enacted statutory exceptions to the privilege in cases of child neglect, as have other jurisdictions. We do note that effective July 1, 1990, Rule 11-504 was amended to add another exception to the psychotherapist-patient privilege. See SCRA 1986, 11-504(D)(4) (Cum.Supp. 1991) (a patient's communications relevant to any information that a physician or psychotherapist is required by statute to report to a public employee or a state agency are no longer confidential). At the time the termination of parental rights proceeding was held in the present case, the new exception to Rule 11-504 was not in effect, and it is unnecessary for the purpose of this case to interpret the meaning of the new rule. There is diversity in the approaches taken elsewhere.
In some jurisdictions, statutes have been enacted that make the child's interest in abuse and neglect cases paramount. See generally A. Haralambie, Handling Child Custody Cases §§ 12.15, 13.26 (1983) (discussing state statutes abrogating certain testimonial privileges in cases involving abuse and neglect and termination proceedings). In others, courts have created exceptions for child custody disputes. See generally S. Stone & R. Liebman, Testimonial Privileges § 7.28 (1983) (discussing and criticizing rationales for the exception).
For example, in In re Von Goyt, 461 So.2d 821 (Ala. Civ. App. 1984), the mother argued on appeal from a judgment permanently depriving her of parental rights that records from her hospitalizations for mental illness should not have been admitted into evidence. The Alabama appellate court recognized that the psychotherapist-patient privilege is an important one, and should not be easily disregarded. However, the court stated that it was convinced that where the issue of a parent's mental state is clearly in controversy, and a proper resolution of the custody issue requires disclosure of privileged medical records, the psychotherapist-patient privilege must yield to the best interest of the child. While Alabama did not have a statute abrogating the psychotherapist-patient privilege in custody or abuse and neglect cases, the court in Von Goyt found it significant that Alabama's termination statute allowed a court to take a parent's mental illness into consideration when deciding whether to terminate parental rights. Cf. In re A.J.S., 630 P.2d 217 (Mont. 1981) (trial court had discretion to consider mother's previous contacts with psychologist in a matter unrelated to court-ordered evaluation of mother to determine whether her child was abused and neglected, because in proceeding to determine custody, child's interest and welfare were to be balanced against mother's rights).
Although many states have chosen to abrogate a parent's privileged communications when a child's best interest is at issue, not all jurisdictions have done so. See In re Petition of Catholic Charitable Bureau, 392 Mass. 738, 467 N.E.2d 866 (1984). In Catholic Charitable Bureau, a social service agency sought to terminate the mother's parental rights to her child. Over the mother's objection, two of her treating psychiatrists testified at the proceeding regarding her mental state and ability to parent. The court interpreted a Massachusetts statute abrogating the psychotherapist-patient privilege in custody cases as being applicable only in those cases where the child's immediate safety is *346 at issue. The court reversed the judgment of the trial court and remanded the case for a new hearing in which the mother's communications to the two psychotherapists would be privileged.
Most jurisdictions have addressed the issue in the context of particular state statutes, and thus with the guidance of the legislature. See generally Thomas R. Malia, Annotation, Validity, Construction, and Application of Statute Limiting Physician-Patient Privilege in Judicial Proceedings Relating to Child Abuse or Neglect, 44 A.L.R. 4th 649 (1986). In most, the statutory language has been construed in favor of admitting evidence relevant to the best interests of the child. See, e.g., In re Welfare of Dodge, 29 Wash. App. 486, 628 P.2d 1343, 1346 (1981) (extending statutory exception for "`any judicial proceeding regarding a child's injuries, neglect or sexual abuse, or the cause thereof'" to a proceeding for permanent deprivation of custody); In re Parental Rights of PP, 648 P.2d 512, 516 (Wyo. 1982) (interpreting statutory exception for "`evidence regarding a child in any judicial proceeding resulting from a report'" of child abuse or neglect required by statute to include testimony of mother's doctor together with hospital records during time he was treating her); In re Norwood, 194 Neb. 595, 234 N.W.2d 601 (1975) (extending exception for proceedings under juvenile court and regarding injuries to children to proceeding to have children adjudicated neglected).
HSD contends that the question raised on appeal was not preserved below. To preserve an objection, "a ruling or decision on the question by the trial court [must be] fairly invoked." State v. Carlton, 83 N.M. 644, 653, 495 P.2d 1091, 1100 (Ct.App. 1972). HSD relies on State Health & Social Services Department v. Smith, 93 N.M. 348, 600 P.2d 294 (Ct.App. 1979) in support of its claim that the mother's objection below was insufficient because it went to all of Dr. Brock's testimony rather than that portion regarding his psychological treatment of mother. Although Smith provides some support to the state's contention, the opinion in Smith explicitly relied on Carlton, and we assume did not intend to modify the general rule. We assume that the record in Smith (which is summarized only very briefly in the Smith opinion) showed that the objection had not been fairly presented to the lower court. We therefore review the record in this case to determine whether the question mother raises on appeal was "fairly presented" to the children's court.
Immediately after Dr. Brock was qualified as an expert witness, mother objected to his testimony on the ground that he had prepared a treatment plan and his testimony would be contrary to the expectations of his clients, who thought he was acting on their behalf. When mother renewed her motion to strike the testimony at the close of direct examination, she contended that HSD should not be permitted to rely on Dr. Brock's testimony when his purpose had been to assist in developing parenting skills. At this stage in the proceedings, HSD argued that the testimony was admissible pursuant to Rule 11-504(D)(2), and mother argued it was not.
The record indicates that the children's court admitted the testimony on the basis that the communications made to Dr. Brock were not confidential. We note that mother did not expressly claim at trial that the communications were confidential and she did not make the same argument at trial that she has made on appeal. Ordinarily, we will not reverse a trial court on the basis of an argument that was not presented to that court. See Woolwine v. Furr's, Inc., 106 N.M. 492, 745 P.2d 717 (Ct.App. 1987). Nevertheless, mother's argument at trial could be construed to say that testimony by Dr. Brock would breach a confidence; and since the children's court ruled that the communications were not confidential, the judge apparently understood that he had been asked to rule on confidentiality. We therefore determine that mother adequately (although just barely) preserved for appellate review the contention that her communications to Dr. Brock were intended to be confidential. Thus, we address the propriety of the ruling the children's court made.
*347 We do not address the broader policy issue of whether and how the psychotherapist-patient privilege protects a parent's communications during treatment against disclosure in an action to adjudicate neglect or abuse and in a proceeding to terminate parental rights. Perhaps if and when the broader policy issue raised by this appeal arises again, the proper resolution will have been advanced by statute or court rule.

II.
As used in Rule 11-504, a "communication" includes: (1) a verbal communication of a patient to the psychotherapist; (2) information or knowledge gained by observation and personal examination of the patient; (3) inferences and conclusions drawn therefrom; and (4) exhibiting the body or any part thereof to the psychotherapist for an opinion, examination, or diagnosis. State ex rel. Human Servs. Dep't v. Levario, 98 N.M. 442, 649 P.2d 510 (Ct.App. 1982). However, communications to a psychotherapist are not per se confidential. In order for communications between a psychotherapist and a patient to be considered confidential, this court has said that the patient must intend the communications to be undisclosed, and the words or conduct of the patient must be such as would lead a psychotherapist to understand or believe that the information obtained is intended to be confidential. Id.
In this case, the transcript suggests that the children's court relied on Levario in determining that none of Dr. Brock's testimony was privileged. Thus, we understand the court to have ruled that all of his testimony was admissible because the communications were not intended to be confidential. We agree that all of his testimony was admissible if the communications were not confidential. See generally 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 504[05], at 504-24 (1990) ("if a patient makes a communication expecting it to be disclosed, the privilege ceases"); cf. SCRA 1986, 11-511 (waiver of privilege by voluntary disclosure or consent to disclosure of any significant part of the communication).
Mother consented to a treatment plan that included communications with Dr. Brock and required reports by HSD. Dr. Brock's testimony suggests that her counsel knew or should have known that her communications with him would be disclosed. Nevertheless, the order entered in this case does not provide that information obtained during treatment was subject to disclosure. Thus, the fact that mother is mentally impaired, a factor not present in Levario, raises issues regarding her capacity to waive the privilege and whether her participation in the court-ordered treatment should be taken as consent to disclosure.
Although the existence of an impairment would be a factor in determining as a factual matter whether there has been a waiver or consent, mother's counsel never presented to the children's court the contention that her impairment precluded a finding of waiver or consent. We cannot say on this record that mother's disclosures to Dr. Brock were involuntary as a matter of law. See In re Adoption of Embick, 351 Pa.Super. 491, 506 A.2d 455 (1986) (holding communications made by a mentally retarded mother to a psychologist were not made with any expectation of confidentiality, because psychologist indicated she had told her patient that the results would be shared with others); see also In re Alvarez, 342 So.2d 492 (Fla. 1977) (holding a mentally ill patient had waived the psychiatrist-patient privilege where patient was told that the psychiatrists were going to testify at involuntary commitment proceedings). Under these circumstances, we do not have an adequate record to determine whether mother's impairment precluded a finding of waiver or consent.
Thus, on the facts of this case, we are reluctant to find that disclosure was voluntary and the communications were not confidential. One possible resolution of the appeal would be to remand for an evidentiary hearing regarding mother's impairment.
However, because there was no claim at trial that mother's impairment precluded a finding of waiver or consent, we would not *348 remand in the absence of plain error. See SCRA 1986, 11-103(D). That is because "[e]rror may not be predicated upon a ruling which admits * * * evidence unless * * * a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context[.]" R. 11-103(A). Here, the specific ground was not stated, and it was not apparent from the context. If we were trying to decide on these facts whether plain error was committed, it would have been helpful had mother identified for the court those portions of the record that support the claim, as well as argued with supporting authority why the claim has merit. Here, she has not done so, but we need not decide on these facts whether plain error was committed because there has been no showing that any error affected the result.

III.
We note that although HSD's answer brief asserted that any error was harmless, mother's counsel did not file a reply brief or otherwise provide citations to parts of the record proper, the transcript of proceedings, or exhibits relevant to this issue. See SCRA 1986, 12-213(A)(3). Mother's only claim of prejudice is that, absent Dr. Brock's testimony, there was no other evidence regarding her ability to parent Mary. We disagree.
There was evidence presented that the older children were previously neglected while in mother's care. Even though Mary had not been in mother's care since birth, the children's court could use evidence of harm or neglect to the other children as a factor in whether mother could adequately care for Mary. See In re I.N.M., 105 N.M. 664, 735 P.2d 1170 (Ct.App. 1987). In addition, there was testimony from HSD personnel who had worked with mother for some time indicating that mother's parenting skills and her relationship with her children had not improved over a period of time. Finally, the record contains a copy of a court-ordered home study dated February 6, 1989 and a copy of a court-ordered evaluation by Dr. Brock dated November 10, 1988. Both of these documents contain evidence that mother lacked the ability to parent Mary.
Thus, evidence other than Dr. Brock's testimony supports the children's court's decision to terminate mother's parental rights regarding Mary. The other evidence was clear and convincing and supports the judgment. See generally Reuben & Elizabeth O. v. Department of Human Servs., 104 N.M. 644, 725 P.2d 844 (Ct.App. 1986) (district court's termination of parental rights must be supported by clear and convincing evidence).
In reviewing this case to determine whether any error affected the result, however, we do not believe it would be enough to say that independently of any testimony erroneously admitted, there was sufficient evidence to support the result. Rather, the question is whether the error itself influenced the result. See Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). The nature of the proceeding, the nature of the rights at stake, and the relationship of claimant's error to the decision reached are all factors to be considered. Id. at 760, 66 S.Ct. at 1245.
Here, mother's right is "constitutionally protected * * * and actions to terminate that right must be conducted with scrupulous fairness." In re Ronald A., 110 N.M. 454, 455, 797 P.2d 243, 244 (1990) (citation omitted). We have said that the appellate standard of review parallels the burden of proof applicable at trial, requiring a greater quantum of evidence because the trial court findings must be supported by clear and convincing evidence. See In re R.W., 108 N.M. 332, 772 P.2d 366 (Ct.App. 1989). Under these circumstances, we think the appropriate question in this case is whether we can say with a "high degree of assurance" that the error did not affect the result. See Mallard v. Zink, 94 N.M. 94, 96, 607 P.2d 632, 634 (Ct.App. 1979).
The termination of mother's parental rights was based on mother's inability to parent and the unlikelihood of her acquiring sufficient parenting skills, despite reasonable efforts by the department to assist her. See NMSA 1978, § 32-1-54(B)(3) *349 (Repl.Pamp. 1989). That portion of Dr. Brock's testimony concerning mother's ability to parent arising out of his treatment of her was largely cumulative of other evidence in the record. The other admissible evidence is so clear and convincing on the factual issues underlying termination that we are persuaded the error, if any, in allowing Dr. Brock to testify about his treatment of mother did not influence the result. Thus, we believe we can say with a "high degree of assurance" that the error, if any, did not affect the result.

CONCLUSION.
Whether or not the children's court erred in determining that mother had waived her right to prevent Dr. Brock from testifying regarding his treatment of her, mother's only claim of prejudice is that there was no testimony other than privileged testimony on which to base a finding regarding Mary, but there was other clear and convincing evidence regarding Mary in exhibits to which no objection was made and in other testimony. Further, we are confident that any inadmissible testimony did not affect the result. Therefore, the order of termination is affirmed.
IT IS SO ORDERED.
HARTZ and CHAVEZ, JJ., concur.