393 P.2d 21

The HISTORICAL SOCIETY OF NEW MEXICO, a New Mexico nonprofit corporation, Relator,

v.

The Honorable Samuel Z. MONTOYA, Judge of the District Court of the First Judicial District of the State of New Mexico, Respondent.

No. 7559.

Supreme Court of New Mexico.

June 8, 1964.

Watson & Watson, Santa Fe, for relator.

Catron & Catron, Santa Fe, for respondent.

CARMODY, Justice.

This is an original proceeding in prohibition, which seeks to prevent the respondent district judge from signing an order directing the clerk of the district court to turn over possession of certain documents which had been delivered to her by relator at the time it filed a suit claiming ownership thereof.

This is the second time that we have been called upon in original proceedings to resolve problems involving the same documents. The opinion in Sender v. Montoya, 1963, 73 N.M. 287, 387 P.2d 860, was announced by us on December 23, 1963, and on January 14, 1964, a peremptory writ of mandamus was issued in conformity with such opinion, directing that the respondent judge dismiss a case then pending before him. The original case in the district court was a replevin action, filed by one Halpin as state records administrator, in which the documents here involved were replevied on the allegation that they were public records belonging to the state. A writ of replevin was issued and the documents were taken from the possession of the defendant, Sender, and delivered into the custody of Halpin, who was not required to furnish a replevin bond because acting on behalf of the state. Our prior opinion, in effect, directed that the

respondent dismiss the original case of State ex rel. Halpin v. Sender, because of the failure of the plaintiff to take some action to bring the case to its final determination within two years from the time of filing. Between the time that our opinion in the Sender case was filed and the time (twenty days thereafter) that the peremptory writ was issued, Halpin transferred possession of the documents to relator. This occurred on January 7, 1964. On January 17th, respondent entered final judgment, pursuant to our mandate, dismissing the original case, and, as a part thereof, directed Halpin to return the documents to Sender at a specified time and place. It should be noted that on January 7th relator filed a motion to intervene in the original district-court case, claiming ownership of the documents. A hearing was held on this motion on January 13th, but no ruling was made until January 17th, the day the final judgment was entered, at which time the respondent denied the motion to intervene. Denial of the intervention is not before us in this proceeding, although relator makes repeated mention of this ruling throughout its brief. Three days following the entry of the above-mentioned final judgment, and approximately twenty-four hours before the documents were required to be delivered under the court's order, relator filed a new suit against both Halpin and Sender, based upon its claim of ownership of the documents, and, at the same time, the documents were delivered to the clerk of the district court. On January 28th, the respondent judge advised counsel that he would sign an order directing the clerk to give the documents, which had been delivered to her by relator, to Halpin by ten o'clock on January 29th, in order that Halpin could comply with the order of the court directing him to return the documents to Sender. After the above announcement by the court, relator filed a statutory affidavit, disqualifying Judge Montoya in the new case. On the following day, relator obtained an alternative writ of prohibition from this court, prohibiting Judge Montoya from signing the order. By this proceeding in prohibition, relator contends that the respondent has no jurisdiction to issue the order mentioned, on two grounds: (1) That relator was not a party or privy to a party in title or interest in the original replevin case (Halpin v. Sender), and therefore was not before the court, subject to its jurisdiction, nor bound by its judgment; and (2) that the proposed order would deprive relator of the possession of its property in violation of both the Constitution of the State of New Mexico and the Fourteenth Amendment to the Constitution of the United States.

The underlying question which must be determined is whether the documents, following the issuance of the writ of replevin, remained in custodia legis until a final

determination of that case. Thus we will proceed to answer this question, and in so doing, will dispose of the propositions raised by relator.

Mention must first be made of relator's contention that the trial court somehow lost jurisdiction because of the judgment entered in Halpin v. Sender (the first district-court case). The claim in this connection is made because the trial court refused to allow relator to intervene under the provisions of § 22–17–3, N.M.S.A. 1953. Relator urges that respondent should have merely dismissed the case, rather than entering a judgment directing the return of the property and the dismissal. Allied to this argument is that even if such a judgment is proper, it is erroneous for the reason that it did not alternatively provide for the return of the property or to award payment of the assessed value of the property under § 22–17–12, N.M.S.A. 1953. As we have stated, the claimed error in refusing intervention is not before us, and the failure to direct alternative relief was not error under these circumstances. The court had full authority to return the parties to their original positions when it ordered a dismissal of the case. While it is true that in an ordinary replevin case the judgment must be entered in accordance with the statute, in this particular case, however, where there was no replevin bond, an award to the defendant of the assessed value of the property would have been a useless thing. We find no merit to relator's claim in this connection. Neither Palmer v. Young, 1951, 55 N.M. 469, 235 P.2d 534, nor Barruel v. Irwin, 1882, 2 N.M. 223, cited by relator, lend any support to its position.

Relator places great reliance upon the claimed fact that it is the owner of the documents. This is not conceded, however, and under the pleadings, the ownership is a mere allegation, strongly denied by the adverse party. If it were admitted that relator is the true owner of the property, different rules of law might be applicable; but here the court is not at liberty to assume from the unsupported allegation of ownership that the relator is the true owner —this is a matter which must be disposed of in a proper proceeding. It may be that the new case filed by relator is in the proper form and of the type in which a final determination of this issue may be made. However, we do not reach this question and expressly decline to give any opinion on the problem. The issue before us relates to the right of possession, not title. That there is a distinct difference is pointedly illustrated in Sawyer v. Dollar (D.C.Cir. 1951), 190 F.2d 623, wherein the court said:

"Title and possession are different rights, although usually correlative. One may have title without possession or posseisson [sic] without title. It is true that an established title usually carries with it the right of possession.

But a mere claim to title does not carry a right to possession as against a person in lawful possession. ·The United States does not have an established title to these shares; it has merely a naked unadjudicated claim. The Dollars have a legally established right of possession. So the issue is simply: Can a person with an unadjudicated claim to title lawfully continue to hold possession after a valid court order has directed him to deliver the property to another? The answer must be 'No'; a mere claim to property cannot effectively nullify a court order."

Although not agreed to by relator, the above case and its immediate predecessor (Land v. Dollar (1951), 88 U.S.App.D.C. 162, 188 F.2d 629), are, to all intents and purposes, directly in point. The so-called Dollar cases occupied various federal courts for some seven years and resulted in six different opinions from the Supreme Court of the United States and at least thirteen opinions from other courts. The citations to all of these cases may be found in footnote 2 in Kearney v. United States, 1961, 152 Ct.Cl. 202, 285 F.2d 797, and we will not repeat them here. Suffice it to say that the entire group of cases commenced with a suit by certain Dollar individuals and the Dollar Steamship Line, seeking to recover shares of stock held by the United States Maritime Commission on the claim that the shares had been given to the Commission as collateral to secure a debt which had been fully repaid, but that the Commission claimed that the shares were held by them as belonging to the United States. It was eventually held in 188 F.2d 629 that the Dollars were entitled to "possession" of the stock. The Secretary of Commerce, Charles Sawyer, as successor to the Maritime Commission, refused, in his capacity as Secretary of Commerce, to endorse the stock as required by the court decree, and he, together with certain members of the United States Attorney General's staff, the president of American President Lines, Ltd., and others, were found to be in contempt of court in Sawyer v. Dollar, supra. Relator here contends that such case is distinguishable because of the discussion relating to the official capacity of the Secretary of Commerce and the manner in which he held the shares. Nevertheless, this is only a portion of the holding of the case, the remainder, as in part pointed out in the above quotation, holding that even United States government officials may not refuse to deliver possession of property under an order of court upon the unadjudicated claim of title in the United States. Thus, in the Sawyer case, the court specifically ruled that its prior decree must be complied with, by requiring delivery of fully-effective possession of the shares of stock, even though the right to bring suit to establish title was a course open to the United States.

It is of interest that such a suit was pending in the United States District Court for the Northern District of California at the time of the decision in Sawyer v. Dollar, and, apparently as an outgrowth thereof, the litigation was finally settled by way of compromise.

■ For our purposes here, Sawyer v. Dollar, supra, stands for (1) the authority of the court to order delivery of possession, irrespective of an unadjudicated claim of title by another, not a party to the litigation; and (2) the order of court directing delivery of possession could be enforced by contempt proceedings even against non-parties to the litigation, including representatives of the department of justice who had advised and counselled a course of action contrary to that ordered by the court.

■■ It is clear in this case, as in Sawyer v. Dollar, supra, that the respondent judge retained the "possession" of the documents in custodia legis, pending a final determination of the cause, and there is no doubt but that the documents were in custodia legis when held by Halpin just as though they were in the actual possession of the court. See Bisconer v. Billing, 1925, 71 Cal.App. 779, 236 P. 329. No one had the right to disturb the court's determination of such right of possession. Halpin had no right to attempt to divest himself of this possessory right, nor could he substitute his judgment as to who was the owner of the property for that of a court of competent jurisdiction. Relator's right to try the title is fully preserved, but it cannot, by its own action, dispossess Sender of the right to possession. It is quite obvious that what has been attempted here is to relieve relator of the responsibility for putting up a replevin bond by depositing the documents in the office of the clerk. We do not believe this to be allowed by law. Otherwise, any person with a mere claim of title could, by obtaining possession of another's property and depositing the same with the clerk of the court at the time of filing a case to determine title, effectively circumvent our replevin laws in failing to furnish bond. Thus the possessor of any property could be deprived of his right to the use of the property without any guarantee to protect him from deprivation of use and damages, should the claimant be unsuccessful. Compare Sawyer v. Dollar, supra, 190 F.2d at 640, 641.

■ We have many times held that the court first obtaining jurisdiction of a subject matter retains it, as against a court of concurrent jurisdiction. Malcomb v. Smith, 1950, 54 N.M. 203, 218 P.2d 1031; Ortiz v. Gonzales, 1958, 64 N.M. 445, 329 P.2d 1027; Greathouse v. Greathouse, 1958, 64 N.M. 21, 322 P.2d 1075. In this connection, the rule is stated in State ex rel. Parsons Mining Co. v. McClure, 1913, 17 N.M. 694, 133 P. 1063, as follows:

"It is a fundamental rule of law, subject to some exceptions to be hereafter noticed, that, as between courts of concurrent jurisdiction, the first acquiring jurisdiction of a subject-matter of an action is permitted to retain it to the end. * * *"

■■ We have noted certain exceptions to this rule (State ex rel. Parsons Mining Co. v. McClure, supra; Ortiz v. Gonzales, supra), but they have no application here. Here the respondent judge, in the replevin case, obtained jurisdiction and held the property in custodia legis so that the possession of such property could not be interfered with, without the consent of the court. Compare Gottwals v. Manske, 1940, 60 Nev. 76, 99 P.2d 645. Although relator was not a party to the replevin case and therefore cannot be bound by that court's decision in determining title, nevertheless relator did step into the shoes of Halpin insofar as the mere possession of the property is concerned. See Gottwals v. Manske, supra. Relator has, by its action, attempted to take the law into its own hands, by interfering with the possession of the property in custodia legis. Compare Veeder v. Fiske, 1891, 6 N.M. 288, 27 P. 642. See also Wilson Motor Co. v. Dunn, 1928, 129 Okl. 211, 264 P. 194, wherein the Oklahoma Supreme Court was faced with a somewhat similar situation in that an intervenor claimed the right to take an automobile under the terms of its mortgage, notwithstanding that the automobile was in custodia legis, since when it took the vehicle it was not a party to the pending action. The court made the following remark concerning intervenor's reasoning:

"* * * Such an absurd contention could only prevail where might was right and where utter contempt was in vogue of all law, courts, and orderly procedure. * * *"

Relator's claim that the proposed order would deprive it of "its" property in violation of the constitution, we find to be absolutely without merit. As we already have said, the claim that the property belongs to relator amounts to no more than mere allegation of ownership—it yet remains to be proven. Additionally, relator's right to litigate a title is fully preserved.

Relator states in his brief, the following:

"If Judge Montoya had no jurisdiction to permit Relator's intervention in Cause #31768, then even though he may have had custodia legis of the property in that cause, he or another judge can nevertheless determine title and right to possession in Cause #34402 where complete jurisdiction and relief can be granted."

■ The error in this statement is that relator would apparently urge that, by its own action, it can, prior to the enforcement of the final judgment entered by

Judge Montoya in the first case, interfere by attempting to place the determination of the right to possession of the property in some other court. This it cannot do. Without attempting to advise how the question of the title and right to possession may be determined, it should be quite apparent that at least one means of so doing would be that, following the return of the property to Sender, relator could, by filing a proper replevin action together with an affidavit and bond as required by law, fully protect its claimed right to determine title and at the same time preserve the status quo as to the possession of the property, subject, of course, to liability on the bond should the case be determined adversely to relator.

Relator claims that if the order is issued and the property delivered to Sender, that he, or his representative, will immediately remove the property from the jurisdiction of the court. This also is a mere allegation, and even without the assurance of Sender's counsel, which we now have, that removal of the property from the state of New Mexico would be deferred to allow relator the opportunity to file a proper replevin case, still the respondent judge would have it within his discretion to provide for a continuance of the status quo for a reasonable period to allow relator to take such proper legal action as it may determine, to protect its interest, if any.

We have carefully considered the many cases, both in New Mexico and other jurisdictions, cited by relator, but find them to be distinguishable, both in fact and in law. Much as we appreciate the sincerity with which this matter has been presented, we do not believe that the writ of prohibition should be made absolute.

We would be remiss in our duty if we did not comment briefly with respect to the apparent disregard with which the representative of the state, and his counsel perhaps, has treated the decision of this court prior to mandate and the decision of the respondent district judge. Quite obviously, the action in turning over the documents to the relator herein was, to say the least, an ill-advised attempt to circumvent the decision of this court. Regardless of good intentions, such conduct cannot be sanctioned. The state records administrator and his legal representatives, as well as relator, would do well to carefully study Sawyer v. Dollar, supra, in order that they may be fully apprised of the possible consequences which might follow the course of conduct adopted by them.

The alternative writ of prohibition will be discharged as improvidently issued. It is so ordered.

COMPTON, C. J., and CHAVEZ, NOBLE and MOISE, JJ., concur.