**In the Matter of THREE MINOR CHILDREN.**

Supreme Court of Delaware.

Submitted March 20, 1979.

Decided May 11, 1979.

Gary A. Myers of Community Legal Aid Society, Inc., Georgetown, for appellant.

Thomas Lapenta, Deputy Atty. Gen., Wilmington, for appellee.

Before DUFFY, McNEILLY and HORSEY, JJ.

HORSEY, Justice:

Respondent appeals an order terminating her parental rights as the mother of three minor children on the statutory ground of unfitness, 13 *Del.C.* § 1103(4). The children, now five, six and ten years old, have been living in foster homes [1] almost since birth. Legal custody has been in the Division of Social Services, Department of Health and Social Services of Delaware, petitioner, since year of placement. Termination is sought for the purpose of placing the children for adoption by their foster parents. The Superior Court, in a statutory

---

1. The record indicates two of the three children are living together in one home and that all three children have remained in the same home since they were a few months old.

proceeding brought under 13 *Del.C.* Chapter 11, titled, "Termination and Transfer of Parental Rights and Adoption Proceedings" found, after hearing, respondent to be unfit to continue to exercise parental rights and granted the Division's petition for termination. The Trial Judge stated:

"The evidence presented at trial clearly indicated that the mother is unfit to continue exercising parental rights over these children. She simply cannot care for them and the likelihood is that she never will. To deny the petition would be to condemn these children to a tragic limbo; a situation where they will never know a childhood home."

Respondent makes three arguments for reversal—two related to the available grounds under 13 *Del.C.* § 1103 for termination as to a parent without custody at time of the proceedings and the third related to what showing must be made under § 1108 for termination to be found to be in the "best interests" of the child.

· Respondent's arguments may be summarized as follows: (1) a petitioner in custody may not rely on the statutory ground of unfitness, *13 Del.C.* § 1103(4), and must show abandonment; (2) if unfitness is an available ground for termination, petitioner cannot be found unfit without proof of failure to exercise visitation privileges; and (3) proof that termination is in the "best interests" of the child under § 1108 requires proof that failure to terminate either has resulted or will result in physical or psychological harm to the child.

Petitioner, the Division of Social Services, contends that the statute makes no distinction as to procedures or grounds for termination of parental rights between parents with custody or parents without custody at the time of the proceedings; that the rights of respondent were subject to termination on the grounds of unfitness, as to which exercise of visitation rights are irrelevant or not determinative; and that petitioner made the required statutory showing (1)

that respondent was unfit and (2) that termination was in the best interests of the children.

I

█ Since termination of parental rights is controlled by statute, we look to § 1103, as amended, of Title 13 to determine the merit of respondent's contention that rights of a parent cannot be terminated on the grounds of unfitness as to a child no longer in the parent's custody. The pertinent provisions of § 1103 provide as follows:

"§ 1103. *Grounds for termination of parental rights.*

The procedure for termination of parental rights for the purpose of adoption . . . may be initiated whenever it appears that:

(1) The parent or parents of any child, or the person or persons or organization holding parental rights over such child, desires to relinquish such parental rights; or

(2) Any child has been abandoned; or

(3) The parent or parents of any child or any person or persons holding parental rights over such a child are found by the Court to be mentally incompetent . . ;

(4) The parent or parents of any such child, or any person or persons or organization holding parental rights over such child are not fitted to continue to exercise parental rights; or

(5) Both parents of a child are deceased.

\* \* \* \* \* \*"

To recite the statute would seem to be sufficient to dispose of respondent's argument. The statute makes no distinction between procedures or grounds for termination of rights of parents in custody as opposed to parents whose custody has been previously relinquished, either voluntarily or otherwise.[2] Nor do any other provisions of the Act, 13 *Del.C.* Chapter 11 of the 1974

---

2. Respondent appears to have voluntarily relinquished custody of the eldest of the three children and not to have contested the Division's removal of the two younger children from her care almost immediately after birth.

Revised Code, contain any language suggesting any support for respondent's position.

Further, § 1103, by listing the grounds for termination in the disjunctive, evidences clear legislative intent that each of the stated grounds is to be considered an independent basis for termination, with the choice of grounds depending upon the facts of the particular case and with the choice lying with the petitioner, subject, of course, to proof thereof.

Notwithstanding § 1103's clarity, respondent contends that a "conflict" exists between § 1103(2) and § 1103(4) without demonstrating any conflict in fact between these provisions of the 1974 Revised Code. Since the "conflict" is imagined and not real, there is no reason to search for resolution of the conflict through previous provisions of the statute as found in the 1953 *Delaware Code*, Title 13, Chapter 11. Suffice it to say that we have examined the '53 Code provisions as to termination of parental rights and we likewise find no support for respondent's contention. In any event, provisions of the '53 Code are irrelevant to this proceeding filed in 1975 and controlled by the 1974 Revised Code of Delaware. Under 13 *Del.C.* § 1104(8) authority is conferred upon the State Department of Health and Social Services to petition for termination of parental rights; and under § 1103(4) parental unfitness is an available statutory ground. Moreover, parental unfitness has been a statutory ground for protecting children from "immoral or negligent parents" since 1907. See 24 Laws of Delaware, Chapter 223. After 1933 a showing of either unfitness or abandonment in an adoption proceeding overcame a need of parental consent. *38 Laws of Delaware*, Chapter 162; see also 1935 Revised Code of Delaware, § 3551; 41 Laws of Delaware, Chapter 187. And, when the legislature in 1951 established a separate statutory proceeding for termination of parental rights to precede adoption (where the termination was contested) the two statutory grounds of abandonment and unfitness were carried over into 13 *Del.C.* Chapter 11. See *38 Laws of Delaware*, Chapter 162.

Respondent's argument implies, in effect, that custody of a child is a condition precedent to being an unfit parent in the statutory sense. The corollary to that argument is that a child in the custody of a parent who is, by definition, unfit to continue to exercise parental rights, must continue to be in the custody of that parent until termination is ordered. Neither § 1103 nor the law generally imposes such an unreasonable condition to the administration of these sensitive proceedings.

We recognize that a parent who does not have custody may have fewer opportunities to demonstrate fitness and, under that circumstance, proof of unfitness may be more difficult to establish. But surely the Court may consider all of the relevant circumstances (including those which show whether a parent, within the limitation of resources available, will ever provide a home for the child). In short, we do not accept respondent's argument that custody is, as a matter of law, an indispensable element of unfitness. It is a fact to be considered but it is not controlling.

We reject respondent's construction of 13 *Del.C.* Chapter 11 and rule that unfitness may be relied upon as an independent ground for termination of parental rights whether the parents have or do not have custody of the child at the time of the commencement of the proceedings.

## II

Respondent's second contention is interrelated with the first; namely, that she cannot be found to be "unfit" under § 1103(4) so long as she has exercised her available visitation rights. Again, respondent mistakenly equates unfitness with abandonment and confuses parental rights-duties with visitation privileges, contending that when the latter are exercised the former cannot be terminated.

At the same time, respondent tacitly concedes that she is presently unable to provide a home for her children; that she has not been able to provide a home for her children since their birth; and that it is not likely

that she will ever be able to provide a home for her children. A witness for the Division in effect so testified.

Again, respondent reads into the statute a concept of unfitness that the language of § 1103(4) does not support; that is, that a parent's fitness, or lack thereof, depends upon exercise of visitation rights if the parent is out of custody at the time. The short answer to the argument is that the fitness to be judged is that "to continue to exercise *parental* rights", not fitness to exercise visitation rights. The two are obviously not synonymous.

Further, the statute makes no distinction between parents in custody and parents out of custody in terms of available grounds for termination of parental rights; that is, § 1103 does not provide or suggest that unfitness shall be a basis for terminating parental rights of custodial parents whereas parental rights of non-custodial parents may not be terminated without proof of failure to exercise visitation privileges.

It makes no sense to contend that a parent otherwise found or conceded to be unfit for purposes of custody under 13 *Del.C.* § 706 may not thereafter also be found to be unfit for purposes of permitting the children to be placed for adoption through termination of parental rights, in relying on the same or further evidence of unfitness which was the basis for the transfer of custody. Similarly, a parent who has lost custody through abandonment should not be able to block a later termination of parental rights by the mere showing of exercise of visitation privileges when the parent may have no interest or ability to exercise parental rights in the present or foreseeable future.

Under respondent's reasoning, a chronic alcoholic or person addicted to drugs or an otherwise "grossly immoral" parent within the meaning of 13 *Del.C.* § 706 could not be found unfit for termination of parental rights so long as visitation privileges were exercised and thereby deprive a child of the hoped-for benefits of a permanent new home and adoptive family. Fitness would thus be determined solely on the basis of

visitation—an activity the exercise of which is of little relevance to parental capacity. However, parental fitness, or lack thereof, is not to be determined in a narrow context. In *In re Dingee*, Del.Supr., 328 A.2d 139 (1974), we said:

"No inflexible rule can or should be laid down by which unfitness of a parent to have the custody of his child may be determined, but each case must be decided on its own peculiar facts. The words 'not fitted' have a common and ordinary usage and accepted dictionary meaning and, as to matters pertaining to custody of children, are to be read generally as meaning 'unfitted for parental duties' ".

See also *Clark v. Lyon*, 82 Neb. 625, 118 N.W. 472, stating that the determination of the required degree of unfitness sufficient to deprive a parent of right to custody must be considered, "in relation to the attending circumstances, such as the concern the parent has shown for the children in the past, the suitability of the parent's domestic surroundings to receive the children, and the question of the children's general welfare . . . ." (328 A.2d 140). See also Clark, *Law of Domestic Relations*, § 18.5:

"A proper decision on the termination of parental rights should take into account not merely the natural parent's 'rights', but the extent to which he has failed to perform his parental obligations. In all such cases the crucial factor should be the child's welfare, both material and psychological, considering in particular the ties of affection he has formed and the consequences of breaking those ties. In evaluating these factors the appellate court should give great weight to the trial court's decision. Far too many appellate courts seem to feel that their judgment is superior to that of the trial judge's, when in fact it should be obvious that no case is less susceptible to satisfactory decision on the basis of a written record than one involving children." (Pages 630, 631).

The evidence of respondent's unfitness to continue to exercise parental rights within the meaning of § 1103(4) is well-documented in the record and a detailed recital

thereof is neither necessary nor appropriate. The three children in question have not been cared for by respondent since they were but a few weeks or months old. Respondent has three other children, two in similar custodial arrangements and one living with a relative. Respondent has two or more younger children, one of whom in 1977 at the time of the hearing was supposed to be living with respondent but was in fact living with a friend under a "baby-sitting" arrangement that had lasted for six months. In the seven years preceding the hearing, respondent was found to have lived at twelve or more different addresses within the State and under bizarre living arrangements. The Division has been providing counseling and other services for respondent since at least 1969.

On the basis of the foregoing and other testimony previously referred to, we find there to be substantial evidence to support the Trial Judge's finding of respondent's unfitness within the meaning of § 1103(4). Further, we find the evidence sufficient whether the standard of proof be by a preponderance of the evidence, as the Division contends, or by clear and convincing evidence, as respondent contends.

Decisions in other jurisdictions arising under other factual situations and statutes, cited by respondent, are distinguishable and certainly not controlling. Cases of this type are *sui generis*, with each requiring to be decided on its own particular facts. *In Interest of Hurley*, Ill.App., 44 Ill.App.3d 260, 2 Ill.Dec. 595, 357 N.E.2d 815 (1976) (dispute between mother and father over child custody and with state agency over termination of parental rights of both parents; mother sought to regain custody of both children; and court found evidence of mother's unfitness not to be clear and convincing). Under Illinois law, unfitness is statutorily defined as requiring proof either of lack of continued interest in and visitation with children or evidence of desertion. In *In Re Deerwester*, Ill.App., 131 Ill. App.2d 952, 267 N.E.2d 505 (1971), unfitness for purpose of parental rights was found not to be established because of lack of evidence of desertion or a continuing interest in visitation of mother with her three children, all of whom were physically or mentally handicapped and had been voluntarily institutionalized by their mother due to their need of medical care and attention which she could not afford or provide them. There was no evidence that the mother was otherwise unfit to justify termination of parental rights.

In *Wiggins v. Rolls*, Fla.Supr., 100 So.2d 414 (1958), the court declined to terminate parental rights of the natural father on petition of the second husband of the child's mother who held custody of the child under a divorce decree; the court viewing the matter as an adoption contest between the natural father and a stranger, in which there was wholly insufficient evidence either of abandonment or unfitness. Similarly, in *In re Matter of Adoption of Noble*, Fla.App., 349 So.2d 1215 (1977), termination of parental rights was refused where the claim was asserted on the basis of abandonment, not unfitness, and the court found the mother to have placed the child in an informal custody arrangement with petitioner barely two years previously. The responsible state agency further found the mother to be capable, financially and otherwise, of making plans for taking back her child now that she was supporting herself. In *State v. McMaster*, Ore.Supr., 259 Or. 291, 486 P.2d 567 (1971), the parents of children successfully appealed the termination of their parental rights, the court finding the evidence that they were unfit to be insufficient. The grounds for insufficiency were the parents' impoverished condition, dependency on welfare and husband's frequent unemployment. The court noted such could be said of many families and did not evidence conduct "substantially departing from the norm".

## III

Respondent's final argument for reversal relates to the second of the two-fold requirement of 13 *Del.C.* Chapter 11 for termination of parental rights, namely that transfer of the rights be in the best interest

of the children. 13 *Del.C.* § 1108 provides in part as follows:

"(a) Should the Court find the termination of existing parental rights and their transfer to be in the best interests of the child, it shall make an order terminating such rights in the parent . . . in which they have existed and transferring them to some other person or persons or authorized agency or the State Department of Health and Social Services as may, in the opinion of the Court, be best qualified to receive them."

In *Cline v. Hartzler,* Del.Supr., 227 A.2d 210 (1967), we spoke of the dual requirements for termination of parental rights, namely, (1) facts justifying termination and (2) a finding under the statute of such termination being "in the best interests of the child" (227 A.2d at 212).

The Trial Judge's decision, quoted at page 15 above, embraces both required findings of unfitness and best interest, the latter being implicit in his statement, "to deny the petition would be to condemn these children to a traffic limbo; a situation where they will never know a childhood home".

Respondent contends that a finding of "best interest" is not sufficient or cannot be found without a related finding that failure to terminate will result in physical or psychological harm to the children.

*Cline* does not impose such a condition upon a finding of "best interest" and none can be found within 13 *Del.C.* Chapter 11. "Best interest" is not defined under the statute as unfitness is not defined. Having previously ruled that unfitness does not require precise definition to be constitutionally sound, in *In re Dingee,* supra, we prefer similar flexibility given to the definition and proof of best interest under § 1108(a). Again, no inflexible rule should be laid down as to what showing is required to support a finding that termination and transfer of parental rights is in the best interest of the particular child or children in question. That necessarily depends upon the facts in the context in which the petition is presented. While "best interest" for

purposes of termination of parental rights may not be the same as "best interest" for purposes of transfer of custody, there are parallel or overlapping considerations; and our legislature has spoken as to the relevant factors to be considered in determining the best interest of a child for purposes of custody. See 13 *Del.C.* § 722(a) providing as follows:

"(a) The Court shall determine custody in accordance with the best interests of the child. In determining the best interests of the child, the Court shall consider all relevant factors including:

(1) The wishes of the child's parent or parents as to his custody;

(2) The wishes of the child as to his custodian;

(3) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(4) The child's adjustment to his home, school and community; and

(5) The mental and physical health of all individuals involved."

The breadth of the inquiry for determination of best interest as to custody strongly suggests legislative intent that an equally broad inquiry be made in determining best interest for termination of parental rights; and the absence of any reference to harm of the child indicates that while harm may be permitted to be shown, it is not required. It is also interesting to note that the legislature has seen fit to amend in recent years Chapter 11 to include a provision evidencing legislative intent as to the construction to be placed upon Chapter 11. 13 *Del.C.* § 1113 provides:

"This chapter is designed to achieve without undue delay the paramount objective of the best interest of the child, and all questions of interpretation shall be resolved with that objective in mind. (59 Del.Laws, c. 466, § 23.)"

If the "paramount objective" of the statutory proceeding is the "best interest of the child", it would seem inconsistent with that objective to contend that proof of harm

must be shown by petitioner for "best interest" to be found.

Petitioner suggests that respondent is seeking to inject a "new standard" for termination of parental rights for that provided by statute. However, respondent, rather than treating the question as one of statutory construction of Title 13, Chapter 11 and § 1108(a) in particular, places primary, if not sole, reliance for her construction of our statute upon *Alsager v. District Court of Polk Cty.*, 406 F.Supp. 10 (D.C.), aff'd 545 F.2d 1137 (8 Cir. 1976) and a statement therein concerning proof of harm. The Iowa statute there before the court was materially different from 13 *Del.C.* Chapter 11 and the factual situation of the parties significantly different. In *Alsager,* parental rights were sought to be terminated under a petition filed very shortly after children had been removed from their parents' home on a complaint by neighbors of neglect and immediately following entry of an order of temporary custody, after hearing. Equally significant to the termination proceedings was the fact that the petition alleged that the parents had failed to provide necessary parental care and were unfit, ". . . by reason of conduct detrimental to the physical or mental health or morals of their children . . ." The petition followed the language of the Iowa termination of parental rights statute. In holding for the parents and reversing a grant of termination rights, the Court of Appeals simply found that petitioner had not met its statutory burden of proof that the parents' conduct had proven to be detrimental to the health of the children.

*Alsager* is clearly distinguishable on both its facts and the controlling statute from the case before us and 13 *Del.C.* § 1108. Evidence of harm may be relevant in a termination proceeding where termination is sought within a relatively short time after an involuntary custody proceeding, as in *Alsager.* The Revised Uniform Adoption Act includes a requirement of such a finding where termination of parental rights is sought as to a parent presently or recently in custody of a child. In contrast, the Act provides that where termination is sought after custody of the child has been in the petitioner for an extended period of time [the Act suggests two years], the only requirement of the Act for termination of parental rights is that, ". . . the Court find, after considering the circumstances of the relinquishment and the long continued custody of the petitioner, that the best interest of the child requires the granting of the adoption." [Section 19(b)(2)]. That is the case before us; and under the facts of this case, we reject respondent's proposal that harm be required to be shown for termination of parental rights to be found to be in the best interest of the children. We further reject respondent's final contention that absent such a finding of harm, a determination of "best interest" is necessarily based on pure speculation and conjecture and thus in violation of due process, citing, again, *Alsager.* As stated previously, we find termination of respondent's parental rights to have been established to be in the best interest of the children in question.

AFFIRMED.