647 P.2d 400

**In the Matter of Jane DOE, a child.**

**STATE of New Mexico, ex rel. DEPARTMENT OF HUMAN SERVICES, Petitioner,**

v.

**Eloida MINJARES, Respondent.**

**No. 14050.**

Supreme Court of New Mexico.

June 16, 1982.

Jeff Bingaman, Atty. Gen., Bruce M. Burwell, Asst. Atty. Gen., Santa Fe, for petitioner.

Larry R. Hill, Alamogordo, for respondent.

## OPINION

EASLEY, Chief Justice.

The Human Services Department (Department) sought to terminate the parental rights of Mrs. Minjares. The trial court granted the Department's petition, but the Court of Appeals reversed, holding that the trial court's decision was not supported by clear and convincing evidence. We granted the petition for certiorari, and we reverse the Court of Appeals.

We discuss whether the trial court's decision to terminate parental rights on the grounds of neglect is supported by clear and convincing evidence.

Mrs. Minjares lived with her seven children in squalid conditions. The furniture contained lice and leeches. Roaches roamed throughout the small, three room house, which had no indoor plumbing. The floor had human feces on it. Upon discovery of this, the Department assigned a homemaker to Mrs. Minjares to help supervise the children and to teach her and her children cleanliness. The Department also moved her and the children into government subsidized housing and obtained a second-hand set of furniture free of the lice and leeches. After moving to the subsidized housing, Mrs. Minjares gave birth to Jane Doe. Jane Doe has a birth defect which requires her to wear a hip harness in accordance with medical instructions. The homemaker continued to assist Mrs. Minjares and, according to her testimony, the household deteriorated within a month—"Just another mess." The homemaker said that Mrs. Minjares did not put on Jane Doe's hip harness.

On one of the homemaker's scheduled visits, she found Jane Doe, age eleven months, and another child, age three years, by themselves. One of her sons, age five, returned. The homemaker then called the caseworker, seeking advice on what to do with the children. The caseworker contacted the district attorney, and the children were taken to foster care. Mrs. Minjares returned and was very upset. She said that she left the children when they were sleeping to get some milk and diapers for Jane Doe.

Mrs. Minjares was found by the Childrens' Court to have neglected the three children. Two of the children were shortly reunited with Mrs. Minjares, but Jane Doe remained in foster care. The reason for not returning Jane Doe at the same time as the other children, according to the caseworker's testimony, was Mrs. Minjares' "mental condition."

For Mrs. Minjares to get custody of Jane Doe, she would have to comply with the Department's service plan and show progress in it. The service plan called for improvement of Mrs. Minjares' supervisory abilities over her children, instruction on home cleanliness and an increase in her awareness of the seriousness of the situation. Four years later, the service plan was reduced to writing and modified, providing for weekly visits with Jane Doe for two hours, weekly conferences with the caseworker, and weekly meetings with a counselor. This 1979 service plan included language, which was deleted at the insistence of Mrs. Minjares, to the effect that failure to abide by the plan may result in termination of her parental rights of Jane Doe.

The Department's visitation records indicate that Mrs. Minjares saw Jane Doe on the average of two hours a week twice a month. There was also one overnight visit during the last five years. Mrs. Minjares is

too poor to own a car and lives in Alamogordo, while the foster parents reside in Ruidoso.

After Mrs. Minjares was adjudged a neglecful parent in 1975, the trial court placed Jane Doe in foster care for an indefinite period of time not to exceed one year. That custody order was extended two times, totaling three more years in foster care. The Department sought to terminate Mrs. Minjares' parental rights in 1977, but due to the failure to provide her notice, the trial court's order was set aside. The Department then filed another action in 1979 to terminate parental rights which is the subject of this appeal.

The trial court terminated Mrs. Minjares' parental rights on two grounds: First, the trial court determined that the conditions of neglect which existed at the time Jane Doe was removed from Mrs. Minjares' home are unlikely to change in the forseeable future. Secondly, the trial court found that Jane Doe has lived all but eleven months of her life with the foster parents, Jane Doe has a child-parent relationship with her foster parents, and no child-parent relationship exists between her and Mrs. Minjares.

The evidence in the record clearly shows that three of Mrs. Minjares' children have been adjudicated delinquent. Jane Doe knows all the names and ages of the foster parents' children but only knows the name of one of her blood-sisters. Jane Doe refers to Mrs. Minjares as her "other mother"; however, she looks upon her foster mother as her psychological mother. A psychologist testified that "[Mrs. Minjares'] ability to express emotion is so limited [,] and she's a very cold person, non-caring at times, not able to form relationships and maintain them, I feel that she'll have difficulty with any child, raising any child. And this may prove to create severe problems in their behaviors, in their social skills in the future." The psychologist further said, "I feel that Mrs. Minjares does not make a good parent. Looking at the history of the children, several of them are in very serious difficulties: in prison, retardation centers and alike, juvenile delinquents. It proves

to me that she cannot train, control, supervise children."

We begin by emphasizing that "parental rights are among the most basic rights of our society and go to the very heart of our social structure." Comment, *Application of Vagueness Doctrine to Statutes Terminating Parental Rights*, 1980 Duke L.J. 336; *see Huey v. Lente*, 85 N.M. 585, 595–96, 514 P.2d 1081, 1091–92 (Ct. App.), (Hernandez, J. concurring), *rev'd on other grounds*, 85 N.M. 597, 514 P.2d 1093 (1973). "The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." *Santosky v. Kramer*, —— U.S. ——, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982). "The court may not balance the backgrounds of the parties and decide which party may provide the 'better' environment for the child . . . . [S]uch considerations are [not] applicable . . . in actions brought to terminate the rights of a natural parent." *Huey v. Lente, supra*, 85 N.M. at 597, 514 P.2d at 1093 (Hernandez, J. concurring).

A trial court's decision in termination of parental rights cases will be upheld if its findings are supported by clear and convincing evidence and if it applied the proper rule of law. *See Esquibel v. Hallmark*, 92 N.M. 254, 586 P.2d 1083 (1978) (substantial evidence case); *Santosky v. Kramer, supra*; § 40–7–4(J), N.M.S.A.1978 (Cum.Supp.1981). All conflicts in evidence are resolved in favor of the prevailing party, unless not supported by clear and convincing evidence. Clear and convincing evidence instantly tilts "the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *In re Sedillo*, 84 N.M. 10, 12, 498 P.2d 1353, 1355 (1972) (citations omitted).

The rights of a parent with reference to a child may be terminated if any one of the four statutory provisions are met. § 40–7–4(B), N.M.S.A.1978 (Cum.Supp.1981).

These are: (1) abandonment, § 40–7–4(B)(1), (2), N.M.S.A.1978 (Cum.Supp.1981); (2) neglect, § 40–7–4–(B)(3), N.M.S.A.1978 (Cum.Supp.1981); (3) abuse, § 40–7–4(B)(3); and (4) extended foster care, § 40–7–4(B)(4), N.M.S.A.1978 (Cum.Supp. 1981). Section 40–7–4(B)(3) provides that the trial court shall terminate a parent's rights if:

> [T]he child is neglected * * * as defined in Section 32–1–3 NMSA 1978 and the court finds that the conditions and causes of the neglect * * * are unlikely to change in the forseeable future despite reasonable efforts by the [D]epartment * * * to assist the parent in adjusting the conditions which render the parent unable to properly care for the child. * * *

Our Children's Code, §§ 32–1–1 through 32–1–53, N.M.S.A.1978 (Repl.Pamp.1981), defines a "neglected child" as one "who is without proper parental care and control or subsistence, education, medical or other care or control necessary for his well-being because of the faults or habits of his parent ... or his neglect or refusal, when able to do so, to provide them...." § 32–1–3(L)(2), N.M.S.A.1978 (Repl.Pamp.1981).

 The testimony of the homemaker, caseworker and psychologist clearly and convincingly prove that Mrs. Minjares does not possess the ability to follow medical instructions or to control or to supervise Jane Doe. She has made no progress in following the service plan for the last six years. Moreover, her being the mother of three adjudged delinquents emphasizes her inability to control and supervise children. The evidence indicates that she is unlikely become able to do so in the forseeable future.

Therefore, we find that there is clear and convincing evidence supporting the trial court's decision to terminate Mrs. Minjares' parental rights over Jane Doe.

We, accordingly, do not reach the constitutionality of Section 40–7–4(B)(4), N.M.S.A.1978 (Cum.Supp.1981), which was raised at the Court of Appeals. The decision of the Court of Appeals is reversed, and the decision of the trial court is affirmed.

IT IS SO ORDERED.

PAYNE, FEDERICI and RIORDAN, JJ., concur.

SOSA, Senior Justice, not participating.