649 P.2d 510

**In the Matter of John DOE I, II, III, IV & V.**

**STATE of New Mexico, ex rel. HUMAN SERVICES DEPARTMENT, Plaintiff-Appellee,**

v.

**Mary Lou LEVARIO and Raymond Sickler, Defendants-Appellants.**

**No. 5478.**

Court of Appeals of New Mexico.

July 20, 1982.

Albert H. Engel, Las Cruces, for defendants-appellants.

Jeff Bingaman, Atty. Gen., Bruce M. Burwell, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

SUTIN, Judge.

The trial court terminated the parental rights of Mary Lou Levario (Mary) and Raymond Sickler, natural parents. Mary appeals. We affirm.

On September 11, 1979, the Department of Human Services (DHS) filed a "Neglect Petition" under § 32–1–19, N.M.S.A. 1978 of the "Children's Code." It alleged that the parents negligently placed their children in a situation that would endanger their health; that the parents were unable to discharge their parental responsibilities because of mental incapacity; that a preliminary inquiry was completed and it was in the best interest of the children and the public that the petition be filed. The children were not in the custody of DHS.

An affidavit for ex parte custody order, an ex parte custody order, and an appointment of guardian ad litem for the children were filed.

On September 25, 1979, the court ordered an evaluation by Southwest Mental Health Center of the parents and children with copies of all diagnostic or evaluation reports to be given to lawyers of the parties.

On December 27, 1979, a stipulated agreement was entered into by the parties and lawyers. It provided that the parents would not contest DHS custody of the children. It also stated what the duties of Mary were with reference to the care of the children and what the duties of DHS were and Raymond. On the same day, the stipulation was adopted as the order of the court. No further proceedings took place. No determination was made whether Mary had neglected the children. The essence of the order left Mary with care of the children during a two year period in which DHS had uncontested custody of them.

On March 13, 1981, DHS filed a verified application to terminate parental rights pursuant to § 40–7–4, N.M.S.A. 1978 (1981 Cum.Supp.). The grounds stated were those set forth in § 40–7–4(B). The facts and circumstances supporting those grounds were alleged. Trial was had June 24, 1981. On September 8, 1981, a decision was rendered in which parental rights were terminated. Mary's rights were terminated on the basis of child neglect. Section 40–7–4(B)(3). The trial court found:

3. Respondent Sickler abandoned his said children.

4. Respondent Mary Lou LeVario is the natural mother of said children, but she has failed to provide proper parental care and control for them.

5. Respondent LeVario has passively neglected her children whereby they have suffered emotional and psychological damage.

6. Neither respondent is likely to change in the foreseeable future notwithstanding reasonable efforts of the state in assisting both respondents to become responsible parents.

7. It is to the best interests of the children that their care, supervision and rearing not be further entrusted to either respondent.

The trial court concluded that the Sickler children were neglected children and the parental rights should be terminated.

The findings of the court are sustained by clear and convincing evidence, substantial in nature. Section 40–7–4(J).

■ Mary raises seven points of error. Those pertaining to an attack on the court's findings are without merit. We will not weigh the evidence and substitute our judgment for that of the trial court. We will resolve the legal issues presented. They are: (1) the court lacked jurisdiction to proceed in the instant case; (2) the psychological testimony concerning the mother's parental ability was inadmissible; and (3) termination can only be accomplished if all the criteria of § 40–7–4(B)(4) are established.

A. *The trial court had jurisdiction to proceed in the instant case.*

Mary contends that the orders entered in the neglect proceedings on December 27, 1979, precluded consideration of the instant case on termination of parental rights. Reliance is had on the rules stated in 50 C.J.S. *Judgments* § 598 (1947) and 21 C.J.S. *Courts* § 492 (1940).

■ The "Judgments" rule is entitled "Estoppel by Former Recovery." Simply stated, a final valid judgment on the merits bars any further suit between the same

parties on the same cause of action. See, *State ex rel. Sofeico v. Heffernan*, 41 N.M. 219, 67 P.2d 240 (1936).

■ The neglect proceedings did not result in a final judgment on the merits. No hearing was held. No determination was made whether Mary had neglected her children. The case was left in limbo. DHS was not barred under the "Judgments" rule from bringing the termination proceedings.

■ The "Courts" rule is entitled "Priority and Retention of Jurisdiction." Simply stated, the court first obtaining jurisdiction retains it as against a court of concurrent jurisdiction in which a similar action is subsequently instituted between the same parties seeking similar remedies involving the same subject matter. See, *Historical Society of New Mexico v. Montoya*, 74 N.M. 285, 393 P.2d 21 (1964). In the instant case, the district court sitting as the children's court had exclusive jurisdiction of the termination proceedings. Section 32–1–9(B)(1). Furthermore the remedies were not similar. In the neglect proceedings, Mary only had care of the children. In the termination proceedings, Mary was divested of all parental rights as stated in § 40–7–4(L). There was similarity in both actions on the subject of neglect but dissimilarity with respect to the remedy. Mary suggests that the neglect proceedings could be transformed by motion into a termination proceeding; therefore, the court in the termination proceedings interfered with the jurisdiction of the court in the neglect proceedings. Inasmuch as both the neglect and termination proceedings were filed in the children's court division of the district court, we assume that an amendment to the petition in the neglect proceeding could have sought termination. Such, however, is irrelevant. The *only* proceeding seeking termination was the second proceeding; the prior proceeding, concerned with the fact of neglect, was not a jurisdictional bar to the separate termination proceeding.

The trial court had jurisdiction to proceed with termination of parental rights.

**B.** *The psychological testimony was not privileged.*

Mary contends that the testimony of two psychologists as to her parental ability was privileged and inadmissible. The gist of their testimony was that Mary had a chronic, inadequate personality which was unlikely to change.

Reliance is had on Rule 504 of the Rules of Evidence entitled "Psychotherapist-patient privilege." A licensed or certified psychologist is a psychotherapist. Rule 504(a)(2). Mary sought to exclude *any* testimony by the psychologists concerning her condition. This objection went far beyond any question of a confidential communication made by Mary. She sought to bar any testimony concerning the children even though the children's attorney expressly stated that no privilege was claimed on behalf of the children. She sought to bar any testimony concerning herself on the basis of Evidence Rule 504.

Because Mary had obtained mental health counseling pursuant to the stipulation in the neglect proceeding and because reports of counseling had been furnished to all parties, the trial court ruled that any privilege had been waived. On appeal Mary attacks the waiver ruling; she asserts that the Department should be estopped to claim a waiver on the basis that the reports disclosing the counseling and their results had been obtained by the Department under the guise of appearing to assist the mother. We do not answer this contention.

On appeal, Mary does not identify any confidential communication which the psychologists disclosed in their testimony. Thus, nothing is presented which suggests that the privilege in Evidence Rule 504(b) was violated. *State Health and Soc. Serv. Dept. v. Smith*, 93 N.M. 348, 600 P.2d 294 (Ct.App.1979).

Further, Evidence Rule 504(d)(3) states:

(3) Condition an element of claim or defense. There is no privilege under this rule as to communications relevant to an issue of the mental or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense, or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of his claim or defense.

2 Weinstein's Evidence § 504[07] (1981) explains that the above-quoted rule

is based on the familiar principle of waiver. It proceeds on the assumption that it is unfair for a party to rely on his mental condition, and, at the same time, suppress evidence relevant to that condition. The exception applies in both civil and criminal cases and, therefore, applies when a criminal defendant pleads insanity.

Mary's communications to the psychologists were relevant to her mental condition; in the termination proceeding Mary relied on her mental condition in opposing the termination of her parental rights. There was no privilege as to those communications under Evidence Rule 504(d)(3).

It is important to understand the meaning of a confidential communication. Rule 504(a)(3) reads in part:

A communication is "confidential" *if not intended to be disclosed* to third persons other than those present *to further the interest of the patient* in the consultation, examination or interview * * *. [Emphasis added.]

These confidential communications are privileged. The patient, not the psychotherapist has the privilege. Rule 504(c). The patient may refuse to disclose and prevent any other person from disclosing confidential communications. Rule 504(b).

Communications between psychotherapists and patients are not ipso facto confidential. To be confidential, two conditions must be present: (1) the patient "intended" the communications to be undisclosed; and (2) that non-disclosure would further the interest of the patient.

A communication includes: (1) verbal communication of patient to psychotherapist; (2) information or knowledge gained by observation and personal examination of the patient; (3) inferences and conclusions drawn therefrom; and (4) exhibiting the

body or any part thereof to the psychotherapist for an opinion, examination or diagnosis. *Williams v. City of Gallup*, 77 N.M. 286, 421 P.2d 804 (1966).

" 'Intention' is a state of mind seldom capable of direct proof and is determinable only through logical deduction from proven facts." *Thomas v. Fitch*, 435 S.W.2d 703, 707 (Mo.App.1968); *Walker v. Woodall*, 288 Ala. 510, 262 So.2d 756 (1972). It is subject to change from hour to hour and from day to day. *State ex rel. Jewett v. Satti*, 133 Conn. 687, 54 A.2d 272 (1947). *In re Estate of Lyman*, 7 Wash.App. 945, 503 P.2d 1127, 1131 (1972) said:

> Uncommunicated subjective mutual intention to abandon is not enough. The intention of each party, to be legally operative, must be a manifested intention. In the absence of words, there must be conduct, or if there be both words and conduct, such words and conduct together must provide sufficient evidence from which a fair inference of their intention may be ascertained.

No objective standard exists to determine a person's state of mind. It is not sufficient for a patient to say that in the patient's mind the communications were confidential and furthered her own interest. It must be manifested in some fashion with words or words and conduct which lead a psychotherapist to understand or believe that the information obtained was intended to be confidential.

The purpose of this rule is to encourage persons who need medical consultation, examination or interview to seek the advice and opinion of a psychotherapist without fear of betrayal. Fear of betrayal, which is a state of mind, must induce a person to communicate this thought to the psychotherapist who in turn will understand the thought conveyed. During consultation, examination or interview, a psychotherapist may inquire about confidentiality but is under no duty to do so. The psychotherapist is ordinarily neutral on this issue until nondisclosure is conveyed. The patient is not neutral because disclosure or non-disclosure may further the patient's interest in the consultation, examination or interview.

A serious question arises whether DHS was estopped to use the psychologists' testimony. The psychologists testified that DHS requested the examinations and counseling. It was not ordered by the court. While appearing to assist Mary with her mental and emotional problems, DHS garnished evidence with which to terminate her parental rights. If DHS induced Mary to be examined and counseled by the psychologists, something she would not have done but for such inducement, DHS is estopped by conduct. *Tome Land & Improvement Co. v. Silva*, 83 N.M. 549, 494 P.2d 962 (1972). Mary points to nothing in the record which shows inducement by DHS and reliance thereon to her detriment.

The psychologists' testimony as to Mary's parental ability were not privileged.

**C.  *Section 40–7–4(B)(4) on termination is an alternative and not applicable.***

Mary claims that § 40–7–4(B)(4) contains the exclusive grounds for termination because the children were in foster care. We disagree.

Section 40–7–4 on termination of parental rights contains four separate bases upon which relief can be obtained. Each one is separated by the word "or." Each is an alternative of the other. *State ex rel. Dept. of Human Services v. Minjares*, 98 N.M. 198, 647 P.2d 400 (1982).

In *Matter of Three Minor Children*, 406 A.2d 14, 16 (Del.1979), the court said:

> Further, § 1103, by listing the grounds for termination in the disjunctive evidences clear legislative intent that each of the stated grounds is to be considered an independent basis for termination, with the choice of grounds depending upon the facts of the particular case and with the choice lying with the petitioner, subject of course, to proof thereof.

See, *In Interest of T. S. L.*, 487 Pa. 245, 409 A.2d 332 (1979).

Relief can be obtained on any one of the four factual situations stated. Ter-

mination of Mary's parental rights was ordered pursuant to § 40–7–4(B)(3) which pertains to a neglected child. Subsection (B)(4) pertains to a child who has been placed in foster care by a court order. Either subsection is independent of the other. Neither subsection contains the exclusive grounds upon which relief can be granted. Subsections (B)(3) and (B)(4) were alleged in the complaint. After trial, either subsection could have formed the basis for termination if the findings of the court were sustained by substantial evidence.

The trial court rendered a decision and judgment on subsection (B)(3). Subsection (B)(4) is an alternative, not applicable in this appeal.

The attorney in this appeal was appointed specially to perfect this appeal. He was not the attorney who tried the case in the court below. An excellent presentation was made.

Affirmed.

IT IS SO ORDERED.

LOPEZ, J., concurs.

WOOD, J., specially concurring.

WOOD, Judge (specially concurring).

I agree with the result reached, with the discussion under Issues A and C and the discussion under Issue B which points out that: (1) there is nothing which suggests that Evidence Rule 504(b) was violated, and (2) there was no privilege under Evidence Rule 504(d)(3). I do not join in the discussion as to the meaning of confidential communication or the speculation about estoppel; such is inappropriate to the decision in this case.